# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

### CASE NO. 06-21457-CIV-Altonaga/Turnoff

RONALD CLAUSNITZER, et. al.   )
   )
   )
       Plaintiffs,   )
   )
v.   )
   )
FEDERAL EXPRESS CORPORATION, )
   )
   )
       Defendant.   )

**NIGHT BOX FILED**

SEP 2 9 2006

CLARENCE MADDOX
CLERK, USDC / SDFL / MIA

---

## MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) OR, IN THE ALTERNATIVE, TO DISMISS/STRIKE CLASS ALLEGATIONS

---

Defendant, Federal Express Corporation ("FedEx") submits this memorandum in support of its motion to dismiss pursuant to Rule 12 (b)(6) or, in the alternative, to dismiss or strike class allegations pursuant to Rule 12(f).

## I.    INTRODUCTION

Plaintiffs filed an Amended Complaint seeking alleged unpaid wages under theories of breach of contract and quantum meruit. Plaintiffs seek to pursue this action as a nationwide class action on behalf of *all hourly employees of Defendant* (in every state except California). Defendant estimates that the proposed class would exceed 100,000 current and former employees.[1] The dismissal of Plaintiffs' claims or, in the alternative, the striking of Plaintiffs' request for class treatment of this *massive* nationwide group, is entirely appropriate at this early stage. Plaintiffs' breach of contract claim fails because the at-will contract and corporate policies and procedures do not constitute an enforceable contract with respect to alleged unpaid

---

[1] Defendant estimates the number of hourly nonexempt former and current employees in the United States exceeds 100,000, inclusive of California. Plaintiffs' estimate ranges from over 50,000 in the original Complaint (¶10) to over 10,000 in the Amended Complaint (¶27), exclusive of California.



wages as a result of activity outside scheduled shifts, meal breaks, and split shifts.  Even assuming an enforceable contract, Plaintiffs have failed to allege a breach.  The quantum meruit claim fails as a matter of law because it cannot be maintained where there is an express contract or one implied in fact, as Plaintiffs have alleged.

Although no longer pursuing claims and a collective action under the Fair Labor Standards Act (FLSA), Plaintiffs' new claims, if certified as a class, would require the interpretation of the laws in 49 states relating to contracts and applicable wage and hour laws. No discovery is needed before a ruling on this motion because it would not change the outcome. An action for breach of employment contracts and/or for unpaid wages as alleged herein is not suitable for class action treatment on a nationwide basis as a matter of law.

## II.  ARGUMENT

### A. PLAINTIFFS' QUANTUM MERUIT CLAIM SHOULD BE DISMISSED PURSUANT TO RULE 12(b)(6) BECAUSE PLAINTIFF HAS ALLEGED A BREACH OF CONTRACT CLAIM.

"Dismissal is appropriate where it is clear that plaintiff can prove no set of facts in support of the claims in the complaint." *Marshall County Bd. of Educ. v. Marshall County Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993) (citations omitted).  A plaintiff must do more than merely label his or her claims to survive a motion to dismiss. *Blumel v. Mylander,* 919 F. Supp. 423, 425 (M.D. Fla. 1996).  Thus, dismissal of a complaint or a portion thereof is appropriate when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action. *Marshall*, supra, 992 F.2d at 1174.

"In ruling on the motion to dismiss the district court must accept the well pleaded facts as true and resolve them in the light most favorable to the plaintiff." *St. Joseph's Hosp., Inc. v. Hosp. Corp. of America*, 795 F.2d 948, 954 (11th Cir. 1986). "When the allegations contained in a complaint are wholly conclusory, however, and fail to set forth facts which, if proved, would warrant the relief sought, it is proper to dismiss for failure to state a claim." *Davidson v. Georgia,* 622 F.2d 895, 897 (11th Cir. 1980).

As this Court noted in *Posely, et. al. v. Eckerd Corporation*, 433 F.Supp.2d 1287, 1313-1315 (S.D. Fla. 2006), a claim for quantum meruit fails where Plaintiffs have alleged the existence of an express or implied contract in fact:

"The elements of a cause of action for quantum meruit (quasi contract) are that: (1) the plaintiff has conferred a benefit on the defendant; (2) the defendant has knowledge of the benefit; (3) the defendant has accepted or retained the benefit conferred; and (4) the circumstances are such that it would be inequitable for the defendant to retain without paying fair value for it." *Hull & Company, Inc. v. Thomas*, 834 So.2d 904, 907 (Fla. 4th DCA 2003).

In *Thomas*, the court explained that a claim of quantum meruit is synonymous with a claim for a contract *implied in law*, as opposed to a contract *implied in fact*.

> A contract implied in law, or quasi contract, is not based upon the finding, by a process of implication from the facts, of an agreement between the parties. A contract implied in law is a legal fiction, an obligation created by the law without regard to the parties' expression of assent by their words or conduct. The fiction was adopted to provide a remedy where one party was unjustly enriched, where that party received a benefit under circumstances that made it unjust to retain it without giving compensation.

*Id.* at 907-07 (quoting *Commerce Partnership 8098 Ltd. Partnership v. Equity Contracting Co.*, 695 So.2d 383, 386 (Fla. 4th DCA 1997)). *Commerce Partnership* engaged in an extensive discussion of the distinction between quantum meruit actions and actions based upon contracts implied in fact, a distinction that has often been blurred by Florida courts. A quantum meruit action may lie "where there is no enforceable express or implied in fact contract but where the defendant has received something of value." *Commerce Partnership*, 695 So. 2d at 387. Conversely, a contract implied in fact exists where, for example, "services were performed under circumstances in which the parties understood and intended that compensation was to be paid." *Id.* (quoting *Tobin & Tobin Ins. Agency v. Zeskind*, 315 So.2d 518, 520 (Fla. 3d DCA 1975))."

Plaintiffs specifically allege in support of their quantum meruit claim that they acted under an express, implied, oral or written request from defendant for the work performed. (*A.C. ¶57*). As set forth above, such an allegation defeats a claim for quantum meruit on its face. Plaintiffs further allege that FedEx has failed and refused to pay them the "reasonable value" for the services rendered. (*A.C. ¶58*). However, such an allegation as to whether their compensation was fair is misplaced.

"Quantum meruit damages cannot be awarded upon the singular determination that the requesting party is deserving." *May v. Sessums & Mason, P.A.*, 700 So. 2d 22, 28 (Fla. 2d DCA 1997). As this Court stated previously: "Plaintiffs essentially ask the Court to alter the terms of the arrangement between the parties based upon their contention that they were not adequately

compensated for the services they allegedly provided to [Defendant]." However, just as in *Posely*, Plaintiffs "cannot identify any basis in fact or law in support of this claim." *Id.*

Based upon the foregoing, Plaintiffs cannot state a claim for quantum meruit and it should be dismissed as a matter of law.

## B. PLAINTIFFS' BREACH OF CONTRACT CLAIM SHOULD BE DISMISSED PURSUANT TO RULE 12(b)(6) BECAUSE PLAINTIFF HAS FAILED TO ALLEGE AN ENFORCEABLE CONTRACT OR A BREACH.

Plaintiffs allege that an express written contract exists, comprised of the agreement signed upon application and FedEx's written policies and procedures manuals and other writings.[2] (A.C. 49). However, the written contracts are at-will employment contracts,[3] and do not address terms regarding hours worked, rates of pay, or calculation methods. (Exh. 9-11).

The following summaries of relevant policies and procedures contained in "The People Manual" also reflects that they do not form the basis for any contractual rights:

**2-5 Acceptable Conduct Employment at Will** (Exh. 3): The employment relationship between the Company and any employee may be terminated at the will of either party as stated in the employment agreement signed upon application for employment. As described in that agreement, the policies and procedures set forth in this manual provide guidelines for management and employees during employment but do not create contractual rights regarding termination or otherwise.[4]

**3-92 Time Cards** (Exh. 1) (Exh. 2 is an example of a reminder of this policy issued to management): It is FedEx policy to compensate employees for all time worked in accordance with applicable state and federal law. Except for certain approved preliminary and post-liminary activities, no employee should perform work "off the clock" for any reason, whether on their own initiative or at the request of management.

**10-95 Workplace practices - Meal/Rest Breaks** (Exh. 4): FedEx Express provides a meal period for eligible employees. Employees are provided applicable state-mandated lunch periods.

---

[2] Attached hereto as Exhibit A is the Index To Exhibits In Support Of Defendant's Motion To Dismiss, which includes the relevant policies (Exhibits 1-8). Other exhibits in the Index are cited as "(Exh. )." Generally, "the Court is constrained to review the allegations as contained within the four corners of the complaint and may not consider matters outside the pleading without converting the defendant's motion into one for summary judgment." *Crowell v. Morgan Stanley Dean Witter Services, Co.*, 87 F. Supp. 2d 1287, 1290 (S.D. Fla. 2000). Where the plaintiff refers to certain documents in the complaint and these documents are central to plaintiff's claim, the court may consider the documents part of the pleadings for purposes of a Rule 12(b)(6) dismissal, and the defendant's attaching such documents to the motion to dismiss will not require conversion of the motion into a motion for summary judgment. *Brooks v. Blue Cross and Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997). Other documents attached to a motion to dismiss may be considered without converting the motion into one for summary judgment "if the attached document is: (1) central to the plaintiff's claim; and (2) undisputed." *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002).

[3] Defendant has not yet located or received some of the Plaintiffs' agreements.

[4] Signed handbook receipts and handbooks also specify similar language.

4

Depending on the length of the work shift, part-time, casual, and temporary employees are provided meal periods in accordance with state laws and work scheduling requirements. Meals should be eaten in designated areas away from the employee's work station or area. Meal periods are nonpaid and are normally 30 minutes to 1 hour in duration, as determined by location or by departmental guidelines.

**8-Meal Period (People Best Practices)** (Exh. 5): Employees are required to take scheduled meal breaks. On-road employees are allowed a reasonable amount of travel time and mileage at the beginning and end of their meal break in order to travel to and from an appropriate meal break location. Leaving one's route boundaries for the purposes of a meal break is prohibited without prior management approval. The Senior Manager may use discretion when determining time requirements on rural routes.

**19-Split Shifts** (Exh. 6): Explains procedures for split shifts, including that management should ensure that employees assigned to mandatory split shifts have access to a comfortable break area or that a vehicle is available for their use. When feasible, the vehicle should be returned to the station during the break. If the employee is authorized to keep the vehicle, management is to provide guidelines for vehicle placement to maintain an appropriate Company image.

**3-5 Overtime Pay for Nonexempt Employees** (Exh. 8): Overtime is paid consistent with general industry overtime practices for nonexempt employees. The policy explains overtime calculations and that where applicable, where federal or state laws impose different or additional requirements for overtime pay or shift scheduling, the Company complies with these regulations.

Attached to Plaintiffs' motion for conditional certification (termed by the Court at Plaintiff Clausnitzer's request) is the September 2001 version of GO Express Station Policies and Procedures (Declaration of Andre Jardini (Jardini Dec.), Exh. 9, p. 78.)[5] Policies and procedures relevant to the Plaintiffs' claims contained therein include:

**Time Cards** (p. 98, 101-102): The FAMIS time card is used to calculate compensation for hourly employees and is completed as follows:

SCH START: Enter the scheduled start time.
ACT START: Enter the actual start time.
END WORK: Enter **actual** end work time.
TOTAL HOURS: These are the total hours you are to be paid for this day. **The total is defined as the hours between scheduled start or actual start time (whichever is later) and end work time, minus all break times (as entered on the right side of the card), plus the number of paid not worked hours recorded on the card. (emphasis added).**

---

[5] Defendant submits that reliance upon declarations of Plaintiffs and their counsel does not require the court to convert this to a motion for summary judgment. Even assuming they do not constitute "pleadings" for purposes of a motion to dismiss or strike, Plaintiffs' cannot reasonably dispute that these are their declarations signed under oath, and cannot submit further testimony that would contradict the declarations in an attempt to save their claims. See, for example, *University Creek Assoc. v. Boston American Financial Group*, 101 F.Supp.2d 1370 (S.D. Fla. 2000). Even though the declarations contain objectionable, inadmissible, inaccurate and misleading information, and counsel's declaration is inappropriate, Defendant accepts the allegations as true for purposes of this motion.

**Preparing for Your Route** (p. 122) Be Prompt: Arrive at your exact assigned work location **by** your scheduled start time.  If you are delayed or prevented from arriving **by** your scheduled start time, you must notify your manager as soon as possible. (emphasis added).

**Responsibilities of all ground operations management** (p.99-100):  Management approval is required for an employee to work in lieu of taking specified meal breaks.  This management responsibility may not be delegated.  However, employees must be paid for all time worked during breaks, even if no specific authorization has been given.

In a Florida action for failure to receive a merit raise, the court dismissed a plaintiff's breach of contract claim, noting:

Many courts in different jurisdictions have determined that FedEx's policies and procedures do not constitute an enforceable contract, including in New York, where Plaintiff Marciano resides.  *Leahy, et. al. v. FedEx*, 613 F. Supp. 906, 1985 U.S. Dist. LEXIS 17975 (E.D.N.Y. 1985); *Aquinas v. Federal Express Corporation*, 940 F. Supp. 73, 6 Am. Disabilities Cas. (BNA) 485 (S.D.N.Y. 1996); *Montalvo v. Federal Express Corp.*, 1996 U.S. App. LEXIS 13587 (2d Cir. 1996); *Cowen v. Federal Express Corporation*, 25 F. Supp. 2d 33 (D.C. Conn. 1998); *Sarbiewski-Keltner, et. al. v. Federal Express Corporation, et. al.*, 1997 U.S. Dist. LEXIS 164 (E.D. Pa. 1997); *Cleary v. Federal Express Corporation*, 1997 U.S. Dist. LEXIS  4171, 73 Fair Empl. Prac. Cas. (BNA) 1094 (E.D. Pa. 1997); *Warner v. FedEx*, 174 F. Supp. 2d 215, 2001 U.S. Dist. LEXIS 18859 (D. N.J. 2001); *Zajac v. FedEx Express ANCA Station*, 68 Fed. Appx. 95, 2003 U.S. App. LEXIS 12585 (9th Cir. June 9, 2003); *Federal Express Corporation v. Dutschmann*, 846 S.W. 2d 282, 1993 Tex. LEXIS 9 (Sup. Tex. 1993); *DeMarta v. FedEx*, 1995 U.S. App. LEXIS 6161 (8th Cir. 1995).

Many states have rejected attempts to imply contracts out of employment policies, including Florida and Georgia.  *See Kelly v. Gill*, 544 So.2d 1162 (Fla. Ct. App. 1989); *Ellison v. DeKalb County*, 511 S.E.2d 284 (Ga. Ct. App. 1999); *Lorbacher v. Housing Auth. Of City of Raleigh*, 493 S.E.2d 74 (N.C. Ct. App. 1997); *Pacheo v. Raytheon Co.*, 623 A.2d 464 (R.I. 1993).  Other courts require varying degrees of specificity before they will find contractual rights in personnel policies.  *See Cote v. Rivera*, 849 S.W.2d 536, 540 (Tex. App. 1995) (contract must be based upon express agreement, not implied); *Bray v. L.D. Caulk Densply, Int'l*, 748 A.2d 406 (Del. 2000) (policy must set forth terms, conditions, or duration to be contractual).

In a Florida action for failure to receive a merit raise, the court dismissed a plaintiff's breach of contract claim, noting:

"We see no justification to depart from long established principles that an employment contract requires definiteness and certainty in its terms. An employee's entitlement to a particular term of employment or to particular salary levels on the basis of criteria more

subject to misunderstanding and dispute than definite terms in an employment contract is not, under the circumstances of this case, the province of a court of law."

*Muller v. Stromberg Carlson Corp.*, 427 So. 2d 266 (Fla. 2nd DCA 1983).

Based upon the foregoing, Plaintiffs cannot establish an enforceable written contract based upon the employment agreement and policies and procedures because adequate disclaimers prohibit converting the policies and procedures into an enforceable contract.

Even assuming a contract, Plaintiffs do not allege a corporate-wide breach of policies, but rather that application of corporate-wide policies (the contract terms) caused the harm alleged. However, this fails to state a claim for a *breach*. In the *Foster* action, referenced in the Amended Complaint *(A.C. 17)*, Plaintiffs alleged that FedEx policies violated California state wage and hour law. In this action, the original Complaint alleged that those same policies violated the FLSA. In the Amended Complaint, Plaintiffs claim that these same alleged policies are nationwide and constitute a breach of the employment contract of thousands of non-California employees, the terms of which allegedly include those very same policies that allegedly violate California state law and the FLSA. Plaintiffs cannot have it both ways—on the one hand that FedEx is in breach because it failed to <u>follow its policies</u> that constitute terms of its employment contracts, and on the other hand, that the <u>application of such policies</u> violate the law.

Plaintiffs' allegation that FedEx breached an alleged contract based on policies by paying employees pursuant to those policies (between scheduled times, rather than manual punch times) is disingenuous. This is particularly true if the policy has been accepted by employees for years. Furthermore, that policy, in conjunction with other policies, such as that employees are to arrive at work *by* their scheduled start time, and 3-92, which addresses compensation for all time worked and strictly prohibits "off the clock" work, clearly put employees on notice that they should not be working between the manual punch time and scheduled shift time and should only engage in authorized work. Indeed, working without authorization is a breach of the alleged contract by the *employee*, not FedEx, as Plaintiffs would have it.

Plaintiffs' factually inconsistent positions that FedEx *breached* policies that resulted in unpaid wages, and that the *application* of those very same policies resulted in unpaid wages do not support a breach of contract claim. Applying or enforcing contractual policy terms as written is not a breach of that contract. Plaintiffs cannot maintain this action in an attempt to alter the terms of the arrangements that they accepted for years on the basis that they were not fairly

compensated, or because they mistakenly believe they are entitled to something because of the *Foster* action or because FedEx recently changed a policy.

Based upon the foregoing, Plaintiffs' breach of contract claim should be dismissed.

## C. PLAINTIFFS' CLASS ALLEGATIONS SHOULD BE DISMISSED OR STRICKEN.[6]

As prerequisites to a class action, Rule 23(a) requires that:

1) the class is so numerous that joinder of all members is impracticable;
2) there are questions of law or fact common to the class;
3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and
4) the representative parties will fairly and adequately protect the interests of the class.

If the Plaintiffs satisfy the prerequisites of Rule 23(a), they must also establish one of the following pursuant to Rule 23(b):

1) the prosecution of separate actions by or against individual members of the class would create a risk of (A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or (B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Local Rule 23.1(2)(b) provides (in pertinent part) that a class action complaint shall contain *appropriate allegations thought to justify such claim*, including, but not necessarily limited to: (i) the size (or approximate size) and definition of the alleged class; (ii) the basis upon which the plaintiffs claim to be an adequate representative of the class; (iii) the alleged questions of law and fact claimed to be common to the class; and (iv) in actions claimed to be maintainable as class actions under subdivisions (b)(3) of Rule 23, Fed.R.Civ.P., allegations thought to support the findings required by that subdivision (emphasis added).

---

[6] The class allegations may not technically be a "claim" for purposes of Rule 12(b)(6) and thus, a Motion to Strike may be the appropriate procedural rule under which to proceed. Decisions addressing the sufficiency of class allegations generally reflect that the defendant has moved to dismiss or, alternatively, to strike the class allegations. The standard for determination should be the same. Rule 12(f) allows the court to strike impertinent or immaterial matter, which would include Plaintiffs' allegations are insufficient to support class treatment.

1.    **Contract And Quantum Meruit Claims For Wages Cannot Be Maintained On A Classwide Basis.**

Typically, as a matter of law, actions in quantum meruit or contract for employee's wages cannot be maintained on a nationwide class-wide basis.   Courts may decide the issue of certification based on a review of the complaint prior to a party's motion to certify the proposed class. *Glewwe, et. al. v. Eastman Kodak Company*, 2006 U.S. Dist. Lexis 33449, *6-7 (W.D. N.Y. 2006) citing *Reinsich v. New York Stock Exch.*, 52 F.R.D. 561, 564 (S.D.N.Y. 1971); *Miller v. Motorola, Inc.*, 76 F.R.D. 516 (N.D. Ill. 1977).   In fact, *Rule 23(c)(1)* encourages courts to "at an early practicable time-determine by order whether to certify the action as a class action." See, *Fed.R.Civ.P. 23(c)(1)*.   *Id.* at *7.   In *Glewwe*, the court granted defendant's motion to dismiss overtime claims based upon state wage and hour laws and breach of employment contracts on the grounds that plaintiffs cannot adequately represent the interests of the proposed class, and a lack of commonality of factual and legal issues among the proposed class. *Id.* at *2-3.

The court found the state law claims lacked commonality because the wage claims were brought under 35 separate wage laws, each with its own peculiar requirements and defenses and the breach of contract claims were brought pursuant to the laws of 50 jurisdictions. Id. at *8.

> Because adjudication of these claims would require the interpretation and application of several different laws of several different states and territories, I find that plaintiffs have failed to establish that the state wage and contract claims of the proposed class are common among the class.   See *Kaczmarek v. IBM, 186 F.R.d. 307, 312-313 (S.D.N.Y. 1999)* ("The prospect of determining the law of all fifty states and then applying the materially different laws that exist …would make this class action too complicated and unmanageable.")

*Id.* at *8.

The court also noted that Rule 23(b)(2) does not apply to cases where the primary claim is for damages, as opposed to injunctive relief. *Id.* at *10.   The court further found that the plaintiffs could not meet the requirements of Rule 23(b)(1) and (3). *Id.* at *11-12.   The court found that common issues of law or fact did not predominate because the purported class members are employed in several different states at several different locations subject to different terms and conditions, and different state laws.   Different remedies are available in each state, and the methods of overtime calculation vary from state to state. *Id.* at *11.   As such, the court found that plaintiffs could not meet Rule 23(b)(3).   The court also found that the plaintiffs failed to establish the requirements of Rule 23(b)(1). *Id.* at *11-12.

In another case involving claims similar to those herein for breach of contract and unjust enrichment, the court refused to certify a class of about 100,000 for failure to provide rest and meal breaks and refusal to pay for all hours worked, because individual issues, not common ones, predominated plaintiffs' breach of contract claim and thus, a class action was not a superior method for resolving the claims. *Basco v. WalMart Stores, Inc.*, 216 F.Supp.2d. 592, 602-604 (E.D. La. 2002). The plaintiffs alleged that WalMart had a "uniform policy" that required employees to miss meal breaks and work off-the-clock and as a condition of employment. *Id.* at 596-597. The court noted that highly specific issues regarding the individual contracts, rest and meal breaks, alleged work "off-the-clock," and damages would have to be resolved, including: 1) whether defendant's employees made offers to plaintiffs, 2) if so, whether those offerors had apparent or actual authority to make an offer, 3) what were the conditions of the offer and agreed terms, and 4) whether, and to what extent, was each contract breached. *Id.* at 602.

> "While plaintiffs reason that Wal-Mart had a system-wide policy to enter into these contracts with its employees, every "contract" at issue in this case was created at a different time, by different employees, and under different circumstances. At trial, each plaintiff will be required to establish the existence of a contract with defendant through offer and acceptance and prove the terms of the contract and it is possible that no two plaintiffs' allegations concerning the formation or terms of their contract will be the same. Thus, plaintiffs' argument that the *liability* issues for their breach of contract claim against defendants predominate over the individualized *damages* that each plaintiff may receive ignores the plethora of individual issues that must be resolved before damage amounts are considered.

> Assuming the existence of a contract between plaintiffs and defendants and a breach by defendant, the damages suffered by each defendant will vary. Furthermore, defendants will be entitled to raise defenses to each alleged "contract" that may differ with each plaintiff. Individual issues, not common ones, predominate plaintiffs' breach of contract claims."

*Id.*

Individualized issues predominate in unpaid hours claims that "arise from the myriad of possibilities that could be offered to explain why any one of the plaintiffs worked off-the-clock." *Id.* at 603. As to any of the class members, defendant may argue that: 1) the particular class member did not in fact work off-the-clock, 2) any instructions received to work off-the-clock without compensation were outside the scope of authority and directly contrary to well established policy and practice, 3) even if a particular class member did work off-the-clock, that

employee unreasonably failed to avail themselves of curative steps provided by defendant to be compensated for that work, 4) if a class member received instructions from a fellow class member such as a personnel manager or hourly supervisor to work off-the-clock and/or not to request a time adjustment, then the class member unreasonably relied on instructions directly contrary to express policy, 5) a class member had an actual and/or constructive knowledge of policies banning off-the-clock work and voluntarily chose to engage in such work in deviance of that policy for any one of a number of reasons, and 6) that a particular class member has a unique animus toward the employer or its employees that would cause that class member to fabricate or inflate his or her claims. Defendants have the right to present their defenses as to each plaintiff's claims that he/she was required to work off-the-clock to the jury." *Id.*

The foregoing cases are squarely on point with the allegations in the Amended Complaint. Although the analysis could end here because *Glewwe* and *Basco* are squarely on point, there are many additional reasons that further support dismissal of the class allegations.

### 2.    Plaintiffs' Class Allegations Do Not And Cannot Meet The Requirements Of Rule 23 Or Local Rule 23.1.

#### a.    Common Questions Of Law And Fact Do Not Exist Or Do Not Predominate Over Any Questions Affecting Only Individual Members.

The predominance inquiry required under Rule 23(b)(3) is "far more demanding" than the 23(a)(2) commonality prerequisite. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 624 (1997). Plaintiff's allegations, documents referenced in the Amended Complaint, and pleadings on file in this matter only serve to further establish that Plaintiffs cannot meet the Rule 23(a) prerequisite of a common question of law or fact, or alternatively, the Rule 23(b) requirement that such commonalities predominate over individual issues. Indeed, the declarations submitted by Plaintiffs on the conditional certification motion discussed infra highlight the factually intensive nature of plaintiffs' claims.

Conclusory allegations regarding a corporate policy are insufficient to establish the element of commonality. *Access Now, Inc. v. Walt Disney*, 211 F.R.D. 452, 454, 455 (M.D. Fla. 2001). Plaintiffs allege a breach of the employment agreement by establishing a corporate policy of failing to pay for the services of hourly employees *(A.C. 28(a))*, but some of the policies described are published and known to Plaintiffs and class members *(A.C. 42A-hours calculated*

*by scheduled shift, not manual punch time)*. These same policies specifically prohibit unpaid work. (3-92, Exh. 1, 2). Plaintiffs allege that one issue is whether a breach occurred in adopting a practice to *arbitrarily* deduct, and fail to pay for, time spent by hourly employees. *(A.C. 28B)* (emphasis added). However, "arbitrarily" means to be determined by whim or caprice, hardly the type of decisions suitable for class treatment of over 100,000 people.

### i.      The Employment Agreement.

Conclusory allegations that an employment contract is "standardized" among all employees are insufficient *(A.C. 24)*. The employment agreements do not contain the same material terms relevant to this matter as alleged by Plaintiffs because they have been revised over the years.[7] (Exh. 9-11). For example, Sandra Tims' at-will agreement executed in 1999 includes provisions for dispute resolution procedures (Exh. 7) and a six-month limitations period for bringing suit that were not contained in earlier versions of the agreement (Exh. 9, ¶¶12, 15).

The six-month contractual limitation period in the FedEx employment agreement has been applied to bar claims. *Cheryl Badgett v. Federal Express Corporation*, 378 F.Supp. 2d 613 (M.D.N.C. 2005). Other courts, including Indiana, where Plaintiff Tucker resides, have acknowledged the application of similar contractual limitations to bar claims by employees. *Cheek v. Western and Southern Life Ins. Co.*, 31 F.3d 497 (7th Cir. 1994). Some states, including New York, were Plaintiff Marciano resides, allow a written contractual limitation. N.Y. C.P.L.R. §201. However, the enforceability of the contractual limitation is subject to interpretation based upon a factual inquiry. See *Wayne Drilling & Blasting, Inc., v. Felix, Inc.*, 129 A.D.2d 633, 634 (N.Y. 1987). If no contractual limitations period applies, the Court will have to examine the statute of limitations for contracts in each state, which vary materially. Plaintiff has not specified the limitations period (*See* A.C. 23). For instance, Illinois has a ten year statute of limitations for contract claims, *Blinderman Constr. Co., Inc. v. Metropolitan Water Reclamation Dist. of Greater Chicago*, 757 N.E.2d 931, 938 (Ill. App. Ct. 2001).

Moreover, FedEx asserts that Tims would be barred from filing suit for breach of contract in light of the finality of the internal dispute resolution procedure, or at a minimum, she should have to show she complied with this term as a prerequisite to filing suit. Employees who do not

---

[7] Even assuming the relevant terms and conditions of the alleged contract are identical for all class members, the "terms" require individualized application. For example, with respect to split-shifts, the manager must determine whether to authorize the employee to keep the company vehicle during the break, or return it to the station, which is an individual determination based upon the particular route, which is a relevant fact that impacts Plaintiffs' split shift claim.

have a written contract must undergo an individualized inquiry to determine their status, i.e. whether a contract existed, but was lost; the terms of such contract; whether the employee can pursue claims as a class member, etc. The agreements for Freeman and Bost, executed in 1982 and 1984, respectively, do not contain the same terms that appear in Tims' agreement. There is a provision that their employment can be terminated at any time without liability for wages earned at the date of termination and that such wages only include pay for time worked, and shall not include accrued vacation time, etc. However, the term "time worked" is not defined.

Plaintiffs' conclusory allegation that there is no relevant difference between the contract law of the 49 states with respect to payment of an agreed hourly wage for work performed or services rendered is untenable on its face (A.C. 12). See *Glewwe* and *Basco*, supra. "In a multi-state class action, variations in state law may swamp any common issues and defeat predominance." *Hallaba v. Worldcom Network Services*, 196 F.R.D. 630, 637 (N.D. Okla. 2000) (quoting *Castano v. American Tobacco Corp.*, 84 F.3d 734, 741 (5th Cir. 1996)). Courts in this District agree. *See Hammett v. American Bankers Ins. Co. of Florida*, 203 F.R.D. 690, 701 (S.D. Fla. 2001) (plaintiff failed to establish predominance in breach of contract action because the law of other states would be implicated)

Contrary to Plaintiffs' allegations, the terms of the agreements are not "standardized" and the evolving material terms must be interpreted and applied under the laws of each state, including multiple limitations periods, whether exhaustion of internal remedies is required and whether it occurred, whether external remedies are available under the contract, the nature of such remedies, and whether Plaintiffs can establish that policies and procedures form a part of the contract, all individual factual inquiries that preclude class treatment.

### ii.    Corporate Policies and Procedures.

Corporate policies, procedures, and practices are also regularly revised. Assuming the policies and procedures constitute an enforceable contract, the Court would need to determine which policies and practices applied at the various times during the limitation period applicable to the claims, resulting in individual factual inquiries predominating over common issues.

Plaintiffs generally allege that they spend time in the morning before their scheduled shift gathering equipment and after their shift performing closing duties. Policy 3-92, Exh. 1, prohibits "off-the-clock" work except for certain approved preliminary and post-liminary activities, which implicates factual inquiries such as whether there is an enforceable contract on

this issue; what constitutes post and preliminary work; whether the policy and past practices between the parties contemplate that the employees will perform some activities before and after their scheduled shifts; and whether the activity was *de minimis*.

The overtime and meal break policies defer to applicable state laws where required. Plaintiffs would have the burden of showing which states have wage and hour laws, whether such laws confer greater rights than the policies, and whether state laws are applicable, including a determination of which employees are exempt from overtime because they were certified by the Department of Transportation (DOT) and drove DOT-regulated vehicles; and whether the state law is preempted the Airline Deregulation Act of 1978 ("ADA"), 49 U.S.C. Section 41713(b)(1). Plaintiffs would also have to show whether state wage and hour law allows private actions or requires administrative exhaustion before filing suit,[8] whether Plaintiffs and each class member complied with such exhaustion, the applicable limitations period, and how overtime is calculated in each such state. Plaintiffs would then have to establish the specific occasions that they worked without pay, and how many paid hours were incurred during that day, week, or rolling 24-hour period, depending upon the method of calculation required in each state the policy defers to, in order to establish entitlement to overtime.

With respect to meal breaks covered by state law, a similar analysis is required, except that Plaintiffs must establish what constitutes a violation and the applicable damages, i.e. whether scans (stops for delivery or pick-up, including customers approaching couriers on breaks) are *de minimis* or result in "unpaid" work that must be compensated, the amount of time worked in relation to each scan, whether breaks have to be a certain length or uninterrupted or taken at specific times, whether defenses are available and applicable under the statute, whether the substantive law changed during the limitations period and FedEx was subjected to different legal standards at different times, etc.

If employees worked in more than one state during the applicable limitations period for each state, the analysis of all relevant issues becomes more individualized, complicated, and even mind-boggling. Consider, for example, Plaintiff Sandra Tims, who, for the past eight years, has worked in three different states in three different positions including: a customer service agent in Nevada, a courier in Georgia, and an equipment operator in Memphis, Tennessee.

---

[8] For example, Massachusetts requires claims under state wage law to be filed with the Secretary of Labor before a private action is instituted, as does Indiana. *Dunfey v. Primetech Prof'l Servs., Inc.*, 2002 WL 388196 (Mass. Super. Jan. 4, 2002); Ind. Code Ann., §§ 22-2-5-1, 22-2-9-3.

(Tims Dec., ¶1-3). The court would have to determine whether a contract existed under the laws of each state, whether state wage and hour law must be applied and all the inquiries related thereto, whether the internal dispute resolution clause is applicable and bars her claims, whether the six-month contractual limitations period applies in each jurisdiction, or some other limitations periods, and the types of damages available in each jurisdiction. Further, even as an individual action, Tims' factual inquiries are staggering. The court would have to determine which allegations apply to Tims while holding the various positions, if any.

Lastly, there are legal defenses that raise individual questions of law and fact, such as Plaintiffs' breach, failure to satisfy conditions precedent, failure to demand payment,[9] laches, waiver, estoppel, unclean hands, and res judicata. These defenses also impact the Plaintiffs' ability to adequately represent the class. For example, Defendant will likely assert *res judicata* as a defense to the claims of Plaintiffs Freeman and Clausnitzer that accrued during a certain time period, based upon prior actions, including an FLSA action, that were adjudicated on the merits and an additional employment action in which they could have raised their instant claims but failed to do so. (See Declaration of Leila Hassan, ¶14, (Def.'s Mot. for Summ. Judg.))

### iii.   Activity Outside Scheduled Shifts.

The plaintiffs claim that they were required to punch in before their scheduled start time, but do not identify a policy that requires this, nor do they suggest how far in advance of their start time they are "required" to punch in (because they cannot). The policy specifies that they arrive *by* their scheduled start time. (GO Express, Jardini Dec. Exh. 9, p. 122). The reasons employees arrive early to work vary factually. The employees may be in a carpool or drop their children off at school near work far in advance of their scheduled start time, without the ability to return home before their shift due to traffic. The fact that they are to punch the manual clock when they enter the facility bears no relation to the scheduled start time (unless they are late).[10]

Anthony Bost states that it was **his practice** to arrive early before his scheduled start time and he would punch in on arrival and that **he customarily** would obtain his tracker and printer before his start time. (Bost Dec. ¶7-8) (emphasis added). Bost does not say how much time this takes or that a manager directed it, or that he never understood whether it was part of his

---

[9] Plaintiffs acknowledge Defendant's right to establish these defenses (or defeat Plaintiffs' claims under these theories if Plaintiff bears the burden of proof). *(A.C. ¶53.).* Plaintiffs cannot reasonably plead, in good faith, that all class members have engaged in the acts alleged in A.C. ¶53.

[10] Hourly employees who use trackers have control over which time they enter as their start time and thus, the manual time stamp prevents falsification of the tracker time to hide the fact that the employee arrived late.

employment bargain for the 22 years he had been a courier (¶2). He now wants this court to change the terms and practices of his employment that he has accepted for the past 22 years because FedEx changed a practice regarding time card methods, with a false hope that a settlement reached under California wage and hour law with no admission of liability will somehow translate into the same result for him in a different state under a completely different theory of recovery. (*See, i.e.,* ¶10-11).

Clausnitzer claims that he was ready and willing to work after punching in but does not state that he spent that whole time working. At most, he claims he spent time gathering equipment and preparing to work on his route and that **sometimes** he was given a directive by management. (Clausnitzer Dec. ¶7, 11) (emphasis added). Sandra Tims does not suggest the existence of a policy or practice of unpaid work or any contractual provision that was breached. At most, she states that she **sometimes** performed duties before her scheduled start time and that the pressure of work motivated her to work even though she was not paid on **occasion**. She also states that on **occasion** due to workplace pressure and productivity requirements, she worked during her unpaid meal break.

Plaintiffs do not state they worked without pay regularly, or as a matter of policy, or for their own personal reasons or convenience, or based upon a subjective or mistaken perception that he or she was pressured to do so by the demands of the job, or an objective reality that the demands of the job required it, or that a manager was alerted by them or aware that they were not yet on their scheduled shift, or why they did not enter that time as their actual start time and request management approval. Plaintiffs would have to offer evidence on each of these issues for each occasion and prove how much of the time between the manual punch and the scheduled shift was spent working. Occasional instances of unpaid work do not support a class action.

Unlike the other Plaintiffs, Marciano was a spill cleanup agent in New York. (Marciano Dec. ¶1-2). Marciano claims he had to punch in before his scheduled start time but **does not claim** that he worked any unpaid time. (¶7). Plaintiffs suggest that they were "under FedEx control" after they punched in, but there is no policy or procedure that suggests employees have to punch the manual clock in advance of their scheduled start time. Indeed, Marciano admits that from 1989 until April 1, 2006, he had full knowledge that the practice for employees was that

they were paid from their computer log times (FAMIS)[11], not the manual punch times (¶4-5). FedEx reserves the right to change its policies and procedures at any time. Even assuming a contract exists, a policy or procedure change does not confer a retroactive contractual right on the Plaintiffs that did not exist in the first instance.

### iv.   Meal Breaks.

Plaintiffs allege a policy of "expecting and accepting services of employees during unpaid breaks and ignoring internal records which demonstrate that those services have been rendered." (A.C. 42B). However, Plaintiffs do not allege any contractual right or provision that requires Defendant to "police" employees' conduct during breaks, or "ensure" that the break is taken, rather than just making it available, particularly given that couriers work independently out of the sight of managers. Indeed, many states do not even require meal breaks. No policy exists that suggests that FedEx has to baby-sit employees who will not take responsibility for their own actions. Whether the employee must take a break, or chose to voluntarily work during a break or not take a break at all in order to get off early or for whatever reason, are individual fact issues that must be analyzed for each occurrence.

Clausnitzer states that, **on occasion**, he has performed duties during his unpaid break. (Clausnitzer Dec. ¶16) (emphasis added)  He does not claim there is a policy or practice of working during unpaid breaks or not being paid for same. Tucker claims she continued to work during unpaid breaks, meeting with customers. (Tucker Dec. ¶11). Even though Marciano does not claim he worked during breaks, he concludes that "in his experience" employees in New York are not paid for work performed during an unpaid break and that **on occasion**, employees worked right through their breaks. (Marciano Dec. ¶12-13) (emphasis added). Kennedy does not assert that she ever worked during unpaid breaks. (Kennedy Dec. ¶8-11).

Plaintiffs claim that FedEx can determine that work is occurring during breaks by looking at records, and that they were not advised to not perform duties during an unpaid break (Clausnitzer Dec. ¶15) (even though policy addresses it). Plaintiffs fail to explain their complete lack of action and personal responsibility with respect to the issue. Furthermore, the records show only scans, not the amount of time spent with respect to each scan. These claims involve

---

[11] Marciano apparently does not use a tracker, but rather enters time directly into a computer. The tracker is used primarily by couriers and CSAs to scan packages and record their various time entries, which generates the various reports Plaintiffs desire to use as evidence. Marciano will likely not have records that may reflect scans in breaks.

highly individualized fact inquiries that would need to made for every single occasion that Plaintiffs claim they had unpaid hours.

<div align="center">

**v.      Split Shift.**

</div>

Plaintiffs do not allege a specific geographical limitation that is applied on a nationwide basis, nor can they. Clausnitzer apparently did not work split shifts, but is only aware that it happens and attributes nothing inappropriate to such a shift. (Clausnitzer Dec. ¶19.) Bost has not worked split shift for years. (Bost Dec. ¶17). Kennedy does not state that she worked during split shift breaks or that she was not free to do as she pleased during her split shift. (Kennedy Dec. ¶12). Marciano apparently did not work split shifts. As such, these Plaintiffs have no claim relating to split shifts and certainly cannot adequately represent a class involving split shifts, nor do their claims share typicality or commonality with the potential class.

Assuming Tims could state a split shift claim, it would only be for the period of time she was a courier in Georgia, but she does not state such a claim. (Tims ¶14). She merely states that she **sometimes** worked a split shift in Georgia and that it is "very difficult" for employees who have a large unpaid gap in the middle of their work day. (¶14). Tims does not identify any employees or explain how she has first hand knowledge that it is "very difficult" or the nature of the difficulties, all highly individualized inquiries. Regardless, Tims does not state it was difficult for her. She states only that her split shift would happen while she was out on the route, which does not establish a breach, let alone a class. (¶15). Tucker does not assert that she ever worked during split shifts, but rather it appears that she claims she should be paid for the whole split shift because she was expected to stay within the area of her route.

If there is an enforceable contract with respect to split shifts, and the policy is to restrict the use of company vehicles during the shift, then there has been no breach, because the employees had notice of or understood this to be a term and condition of employment and accepted it over the years without complaint. Plaintiff's allegations that there is a standard geographic limitation nationwide (A.C. 28E) is refuted by Plaintiffs' declarations (i.e. Tucker, ¶15: 5 miles, Bost, 5 minutes or 1 mile from route). There will be a question as to whether it is a "reasonableness" standard which varies by route, or whether each courier must stay within the geographical boundaries of their route (and even then can request exceptions). The factual issues that abound include whether there is a contract relating to split shifts; its enforceable terms; whether the split shift was mandatory or taken for personal reasons; whether there were any

limitations during the employees' split shifts on each occasion and route because some couriers float among various routes that may be geographically dissimilar; interpretation of the terms Plaintiffs suggest require payment for the entire split shift because of any limitations placed upon the use of the company vehicle during the break; if there is such a contractual term, the extent of limitation that would result in payment for the entire shift being required given their geographic surroundings, and whether the employee was close enough to the station to retrieve his or her own vehicle for the break, or close enough to go home for the break.

Split shift claims are not suitable for class treatment because such claims involve individual inquiries and lack typicality as they are unique to couriers, and not the alleged class.

      **b.**      **Plaintiffs' Claims Are Not Typical Among The Co-Plaintiffs Or Of Potential Class Members' Claims And Plaintiffs Cannot Adequately Represent The Potential Class.**

A Plaintiff "simply cannot adequately represent members of a class with whom he has material factual and legal differences." *Hallaba, supra*, 196 F.R.D. at 643. The named plaintiffs cannot adequately represent FedEx employees in all 49 states because they were not employed in all the states and have not alleged breach of contract under each states' laws, nor can they show that the differences in each state's laws is immaterial or minor, such as whether an enforceable contract exists, limitations periods, and available damages as discussed above. As discussed above, Plaintiffs' declarations also reflect that they cannot adequately represent any potential class or subclass alleged in the Amended Complaint because their claims are not typical. Plaintiffs do not share the same allegations, nor have they suffered the same alleged breaches. See *Stambaugh v. Kansas Department of Corrections*, 151 F.R.D. 664, 677 (D. Kan. 1993); *Zapata v. IBP, Inc.*, 167 F.R.D. 147, 159 (D. Kan. 1996) (plaintiffs failed to establish commonality and typicality because a common discriminatory policy or practice was lacking).

      **c.**      **Separate Actions Would Present No Risk Under Rule 23(b)(1) And Rule 23(b)(2) Is Not Applicable.**

Plaintiffs cannot establish that there is a substantial risk of inconsistent adjudications that would require the defendant to adopt incompatible standards of conduct, or that adjudications with respect to some members of the proposed class would prevent other members from fully or fairly litigating their individual state law claims pursuant to Rule 23(b)(1). *Glewwe, supra*, 2006

U.S. Dist. Lexis 33449 at *11-12.  Additionally, Rule 23(b)(2) does not apply to cases where the primary claim is for damages, as opposed to injunctive relief.  *Id.* at *10.

### d. A Class Action Is Not A Superior Method For Resolving Plaintiffs' Claims.

As demonstrated above, because individual issues, not common ones, predominate in Plaintiffs' breach of contract claim, a class action is not a superior method for resolving the claims. *Basco, supra,* 216 F.Supp.2d at 602-604.  Given all of the issues discussed above, it is hard to imagine how a jury could be charged, how the parties could submit a proposed trial plan, or how this case could even be tried.  *See e.g., In re Ford Motor Co. Ignition Switch Prod.,* 174 F.R.D. 332, 350 (D.N.J. 1997) (the plaintiffs "have not explained how their multiple causes of action could be presented to a jury for resolution in a way that fairly represents the law of the fifty states while not overwhelming jurors with hundreds of interrogatories and a verdict form as large as an almanac").  Defendant is unaware of any court that has ever approved a class with this magnitude of atypical and dissimilar claims and issues.

### III. CONCLUSION

As demonstrated above, Plaintiffs' claims for breach of contract and quantum meruit should be dismissed.  Alternatively, Plaintiffs' class allegations should be dismissed or stricken.

WHEREFORE, Defendant respectfully requests that the Court grant Defendant's Motion to Dismiss, or alternatively, to Strike.


Dated: September 29, 2006                    Respectfully submitted,
       Memphis, Tennessee


                                   **FEDERAL EXPRESS CORPORATION**


By:    _____
       Sandra C. Isom (*Pro Hac Vice*)
       Richard S. McConnell (*Pro Hac Vice*)
       FEDERAL EXPRESS CORPORATION
       3620 Hacks Cross Road
       Building B – 3rd Floor
       Memphis, TN  38125
       Telephone: (901) 434-8600
       Facsimile:  (901) 434-9271

Aaron Reed (Fla. Bar No. 557153)
LITTLER MENDELSON, P.C.
One Biscayne Tower, Suite 1500
Two South Biscayne Blvd.
Miami, Florida 33131
Tel: (305) 400-7500
Fax: (305) 603-2552

Attorneys for Defendant
Federal Express Corporation

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served by overnight delivery on September 29, 2006 on all counsel or parties of record on the attached service list.

_____
AARON REED

## SERVICE LIST

CASE NO. 06-21457-CIV-ALTONAGA/TURNOFF

**COUNSEL FOR PLAINTIFF**:

Andre E. Jardini, Esq.
E-Mail: *aej@kpclegal.com*
Gwen Freeman, Esq.
E-Mail: *gf@kpclegal.com*
KNAPP, PETERSEN & CLARKE
500 North Brand Boulevard, 20th Floor
Glendale, California  91203-1904
Tel: (818) 547-5000
Fax: (818) 547-5329

Michael S. Duberchin, Esq.
E-Mail: *msdlaw@earthlink.net*
LAW OFFICES OF MICHAEL S. DUBERCHIN
4768 Park Granada, Suite 212
Calabasas, California  91302
Tel: (818) 222-7484
Fax: (818) 222-7480

Glen Robert Bregman, Esq.
E-Mail: *GlenBregmanLaw@aol.com*
LAW OFFICES OF
GLEN ROBERT BREGMAN
16633 Ventura Boulevard, Suite 1240
Encino, California  91436
Tel: (818) 981-9793
Fax: (818) 981-9807

Marshall Dore Louis, Esq.
E-Mail: *mdl@sinclairlouis.com*
SINCLAIR, LOUIS, HEATH, NUSSBAUM
& ZAVERTNIK, P.A.
169 East Flagler Street, Suite 1125
Miami, Florida  33131
Tel: (305) 374-0544
Fax: (305) 391-6869

**COUNSEL FOR DEFENDANT**:

Lori A. Brown, Esq.
E-Mail: *labrown@littler.com*
Aaron Reed, Esq.
E-Mail: *areed@littler.com*
LITTLER MENDELSON, P.C.
One Biscayne Tower
Two South Biscayne Blvd., Suite 1500
Miami, Florida  33131
Tel:  (305) 400-7500
Fax: (305) 603-2552

Sandra C. Isom, Esq. (admitted *pro hac vice*)
E-Mail: *scisom@fedex.com*
Richard S. McConnell, Esq. (admitted *pro hac vice*)
E-Mail: *richard.mcconnell@fedex.com*
FEDERAL EXPRESS CORPORATION
3620 Hacks Cross Road, Bldg. B, 3rd Floor
Memphis, Tennessee 38125
Tel: (901) 434-8526
Fax: (901) 434-9271

Firmwide:81534631.3 024910.2053

# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 06-21457-CIV-Altonaga/Turnoff

RONALD CLAUSNITZER, et. al.    )
    )
    )
       Plaintiffs,    )
    )
v.    )
    )
FEDERAL EXPRESS CORPORATION, )
    )
    )
       Defendant.    )

**INDEX TO EXHIBITS IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

        1.      Exhibit No. 1 is a true and correct copy of The People Manual Policy, 3-92 Time Cards, last revised November 23, 2003.

        2.      Exhibit No. 2 is a true and correct copy of FedEx Letter dated January 27, 2004 Re: Western Region Timecard Change Procedures.

        3.      Exhibit No. 3 is a true and correct copy of The People Manual Policy, 2-5 Acceptable Conduct, last revised July 24, 2005.

        4.      Exhibit No. 4 is a true and correct copy of The People Manual Policy, 10-95 Workplace Practice, last revised November 23, 2003.

        5.      Exhibit No. 5 is a true and correct copy of People Best Practices, 8-Meal Period, last revised August 01, 2000.

6.      Exhibit No. 6 is a true and correct copy of People Best Practices, 19 – Split Shifts, last revised August 01, 2000.

7.      Exhibit No. 7 is a true and correct copy of The People Manual Policy, 5-5 Guaranteed Fair Treatment Procedure/EEO Complaint Process, last revised November 23, 2003.

8.      Exhibit No. 8 is a true and correct copy of The People Manual Policy, 3-5 Overtime Pay for Nonexempt Employees, last revised July 24, 2005.

9.      Exhibit No. 9 is a true and correct copy of the Employment Agreement for Sandra Timms dated June 3, 1999.

10.     Exhibit No. 10 is a true and correct copy of the Employment Agreement for Anthony Bost dated August 7, 1984.

11.     Exhibit No. 11 is a true and correct copy of the Employment Agreement for Gerald Freeman dated September 20, 1982.

# EXHIBIT 1

Case 1:06-cv-21457-CMA   Document 35   Entered on FLSD Docket 10/03/2006   Page 27 of 73



**The People Manual (USA)**

Chapters 

Search
Library
FedEx Home

Revision
Highlights
Contents
Pub Info

Key Points
Tables
Figures
Index

# 3-92 Time Cards

### (Last Revised 23 Nov 2003)

## Policy

Employees may be required to complete a daily and/or weekly time card.

## Scope

All employees as designated in policy guidelines

  **The effective date of the changes to this policy is June 15, 2003, as published online.**

## Guidelines

### General

Departmental management determines the necessity of using time cards and the job classifications affected.

It is the policy of FedEx Express to compensate employees for all time worked in accordance with applicable state and federal law. Except for certain approved preliminary and post-liminary activities, no employee should perform work "off the clock" for any reason, whether on their own initiative or at the request of management. Any request to work off the clock should be immediately reported to the employee's matrix Human Resources Representative.

### Completion

Each employee is responsible for performing all time-card-related activities on his own time card. These include, but are not limited to, recording or punching in all start and stop times, entering cardholder's signature or statements regarding entries, activities, etc.

The employee's manager cannot change the time card without the employee affixing his initials indicating an awareness of the change.

### Falsification/Discipline

Completion of the time card of another employee and/or falsification of one's own time card is a serious offense and may result in termination.

### Retention

Exhibit No. 1

All time cards must be retained for a period of 3 years (4 years in California) on site at the employee's station/department. Payroll records for part-time employees must also be retained on site for 3 years (4 years in

Case 1:06-cv-21457-CMA   Document 35   Entered on FLSD Docket 10/03/2006   Page 28 of 73

California).

 If any of these records are subject of investigation, termination, or litigation, they should not be destroyed until after their dispositions.

## Related Policy

- 2-5 Acceptable Conduct

WARNING: This site contains information and procedures applicable only to employees of Federal Express Corporation (FedEx Express). Employees of other affiliated FedEx companies should refer to the sites applicable to their respective affiliated company.

Search *The People Manual (USA)*: [                    ] 🔍

A product of HR Measurement and Support. Your feedback is welcome.

Copyright © 1981–2005, Federal Express Corporation unpublished. All rights reserved.
ISO 9001 controlled document. Contents subject to change.
Printed and other static representations of this data are classified "for reference only."

Exhibit No. 1

# EXHIBIT 2

Human Resources Operations Support    Telephone 949.852.4500
Western Region
2801 Main Street, 11th Floor
Irvine, CA 92614

# FedEx.
Express

Date:  January 27, 2004                    To:    WR Members of Management

From:  Thomas W. O'Hearn                    cc:    Dan Ault
                                                   Kenneth Robinson
                                                   Cindy Light

RE:    Western Region Timecard Changes Procedures

The following information is designed to reiterate our longstanding procedure for changing employee's timecard when it is necessary to do so.

- If a change is made to an employee timecard that corrects an employee error, and this change DOES NOT have a negative impact upon the employee's pay, managers may make the correction but MUST notify the employee of that correction as soon as possible after the change has been made. An example would be correction of simple coding errors or mileage reconciliation, etc. The employee should be notified and initial the timecard before the timecard is actually entered into the system wherever possible.

- No member of management will change, or order a change to an employee timecard that results in a loss of hours or any amount of time actually worked. It is not appropriate to change a timecard where an employee has failed to note a meal or rest break unless the employee specifically states that he/she took the break but inadvertently failed to note it on the timecard. Management must secure the employee's initials on the timecard before making the above changes. Likewise, employees who work beyond their schedule hours should not have timecards changed. Working beyond schedule hours or failing to take require breaks are issues that are subject to discipline under P2-50 (Performance Improvement) or P2-5 (Acceptable Conduct). Employees who refuse to acknowledge the change with their initials will be counseled for failure to follow a management directive and the manager must have the employee's refusal witnessed by another member of management with their initials on the timecard.

Employees have an absolute right to be paid for all hours worked including prep and setup time prior to the beginning of shift. It is unacceptable for any member of management to alter an employee timecard without following the above procedure. Violating this procedure will result in discipline up to and including termination. Timecard altering (Falsification) will not be tolerated in the Western Region.

_____   0/3/04          _____   2/3/04
Manager Signature          Date            Sr. Manager Signature      Date
                           816 72

By signing this memo to file I am acknowledging that I have a full understanding of the procedure for changing timecards, when necessary. I am also aware of the severe consequences for not following the prescribed procedure.

Exhibit No. 2

# EXHIBIT 3



The People Manual (USA)

prev  next

| Chapters |

# 🔑2-5 Acceptable Conduct🔑

### (Last Revised 24 July 2005)

Search
Library
FedEx News

Revision
Highlights
Contents
Pub Info

Key Points
Tables
Figures
Index

## Policy

FedEx Express expects all employees to demonstrate the highest degree of integrity, responsibility, and professional conduct at all times.

## Scope

All FedEx Express employees

## Guidelines

### General

All employees are FedEx Express representatives whether on or off duty. This is particularly important for the employee to remember when wearing a FedEx Express badge or uniform.

### Conduct Expectations

Acceptable conduct involves not only sincere respect for the rights and feelings of others but the assurance that personal conduct in both business and personal life avoids any action that might (1) be harmful to the employee, other employees, the Company, or (2) cause any unfavorable reaction from current or potential customers.

### Tape Recording Prohibited

Except for employees covered by a collective bargaining agreement, tape recording manager/employee conversations, meetings, or other interactions is prohibited unless approved and implemented by divisional guidelines (e.g., customer representative quality process), or the tape recording is done by Security personnel in the course of a Security investigation. Employees and managers are required to adhere to the "no recording" rule. Failure to adhere may be considered insubordination as outlined below.

### Workplace Violence

Violent or threatening behavior is not tolerated in the workplace. All employees are responsible for advising management, the FedEx Express Security Department, Human Resources, or People Help of any actual or potentially serious or violent situations as stated in the **Workplace Violence** guideline of **8-80 Security**.

### Misconduct

*Exhibit No. 3*

FedEx Express requires a high degree of personal integrity and responsibility of its employees. Violations of Company or departmental rules may constitute misconduct for which an employee may be immediately suspended with pay, pending a complete investigation. All alleged violations should be thoroughly investigated and documented. Disciplinary decisions should be based on a logical analysis of the evidence.

Although the following list is not all-inclusive, the following specific violations may result in severe disciplinary action up to and including termination for employees or dismissal for vendors. This list is not all-inclusive.

- Conviction of, or a plea of "no contest" to, a crime involving job-related conduct

- Fraudulent activities

- Repeated incidents of losing ID badges, possession of more than one ID badge, a copy of an ID badge used to secure access to FedEx facilities, or failure to report a missing or stolen ID badge

- Possession of more than one ID badge is a security violation that results in discipline up to and including termination for employees or dismissal for vendors.

- Theft, including unauthorized possession of Company or customer property or the property of other employees

- Failure to report a vehicle accident or occurrence in accordance with **8-90 Vehicle Accidents/Occurrences** and **4-48 Driving Qualifications**

- Disruptive conduct while on duty or while on Company property

- Insubordination or refusal to follow instructions or perform assigned work in a timely manner without valid reason

- Threatening, intimidating, coercing, directing abusive language, or displaying blatant or public disrespect toward any employee or customer while on duty, on Company property, at collection sites, or at off-site Company meetings and functions

- Openly making or publishing false, vicious, or malicious statements concerning the Company, any employee, or customer

- Unprofessional or rude conduct towards any customer while on duty, or in FedEx Express uniform

- Fighting while on duty, at Company functions/Company property

- Damage, destruction, interruption of use, or defacement of Company property, facilities, information systems and applications, or equipment as a result of deliberate or negligent action

- Unauthorized use of Company facilities, assets, or systems, including but not limited to

- o Personal use of COMAIL

- o Use of Company long distance telephone facilities for personal calls

- o Personal or other improper use of the corporate name, proprietary logo, or various trademarks

- Misuse of the Internet or Intranet or other violations of the Information Security Standards

- Violation of corporate safety regulations including

  - o Failure to wear/use protective equipment/devices when provided and/or required (e.g., seatbelts, safety shoes, ear and eye protection)

  - o Requiring or allowing subordinates to perform work activities in an unsafe manner or under unsafe and/or unhealthy conditions

  - o Failure to ensure subordinates attend required safety training

  - o Failure to have the driver-side sliding door closed when the vehicle is in motion

  - o Failure to have the passenger-side sliding door closed when the vehicle is moving with a passenger on board. The only times the passenger side door may be open is when the vehicle is in motion with no passenger, and when the vehicle is not in motion and is actually being loaded or unloaded.

- Violation of guidelines and policy for employee reduced-rate shipping, nonrevenue shipping, interline travel, or jumpseat privileges

- Wearing unauthorized badges, insignias, pins, or other devices while on duty or on Company property

- Solicitation by employees during their working time, solicitation of other employees during their working time, or distribution at any time in working areas of the Company in violation of **10-55 Solicitation and Distribution**

- Leadership failure of a member of management

- Any other act obviously and significantly detrimental to the best interest of FedEx Express and/or fellow employees as determined by management

## Discharge Offense

An employee is dismissed upon completion of an investigation confirming violations related to

- Deliberate falsification of Company documents including but not limited to business reports, delivery records, timecards, benefits eligibility forms, expense reports and employment applications.

- Unauthorized possession of firearms or other dangerous weapons on Company property, as specified in **8-10 Firearms/Weapons**.

   Termination for violating 8-10 is normally warranted; however, lesser discipline may be issued in extraordinary cases with approval of the vice presidents of Legal, Security, and Human Resources. Requests for these approvals should be forwarded to the Employee Relations Department.

- Drugs and alcohol as specified in **2-10 Alcohol and Drug-Free Workplace**.

   Employees who access the GFTP process upon termination for drugs or alcohol should proceed directly to Step 2.

- Violation of the **Confidentiality** guideline for the survey questionnaire as specified in **5-70 Survey/Feedback/Action (SFA) Program**.

## Investigative/Disciplinary Suspensions

**Investigative Suspension.**

Investigative suspensions provide time to management to further investigate a violation. The employee receives pay while on investigative suspension. Management should hold the employee's I.D. badge while the employee is on an investigative or disciplinary suspension. The employee receives notice of the suspension in writing. An investigative suspension may be changed to a disciplinary suspension without pay as outlined in the **Disciplinary Suspension.** section below and in the **Warning Letter/ Recurrent Patterns** guideline.

Investigative suspensions should be completed as soon as possible, normally within 7 calendar days. The employee is informed of the decision within 7 calendar days of the completion of the investigation.

**Disciplinary Suspension.**

If a manager decides not to terminate an employee for a serious policy violation, the manager may issue a warning letter and a disciplinary suspension without pay. When appropriate, managers may change an investigative suspension to a disciplinary suspension without pay. Disciplinary suspensions are given only when they are deemed to be in the best interest of the Company and the infraction is of a severe nature. A disciplinary suspension must be in writing in the form of a warning letter outlining the reasons for the suspension and the applicable dates.

## Warning Letter/ Recurrent Patterns

 All disciplinary actions normally should be initiated within 7 calendar days of the conclusion of the investigation.

**Warning Letter.**

The People Manual (USA)   Page 5 of 11

Based upon the results of the investigative suspension, management may return the employee to work and issue a warning letter as a means of discipline for the policy violation. See **Documentation and PRISM Entry** guideline and **Figure 1,** Sample Warning Letter. Warning letters serve as a notification of behavioral deficiency, and are active in PRISM and prohibit JCA/JCATS submissions for 12 months from the date a warning letter is issued. (This time period is adjusted forward for the number of days an employee spends on a leave of absence.) Disciplinary Suspensions may be given when appropriate and must be outlined in a warning letter. See **Investigative/Disciplinary Suspensions** guideline.

 When an employee receives a second deficiency notification within 12 months (e.g., a warning letter and/or performance reminder), the second deficiency notification must advise the employee that termination may occur if a third notification is received within a 12-month period, regardless of the type of the third notification.

 A Decision Day is only initiated when the second notification qualifies as a performance reminder. (See **2-50 Performance Improvement**.)

Anytime a third discipline/deficiency notification of any type, i.e., reminder or warning letter, is entered in PRISM, an alert "notify" will be sent to the employee's senior manager and managing director and the matrix Human Resources representative. The "notify" will advise that the employee has 3 notifications, and the employee's history will be audited.

Three notifications of deficiency within a 12-month period normally result in termination. However, an employee's entire employment history should be reviewed. Based on the severity of the occurrence an employee may be terminated with less than 3 notifications of deficiency within a 12-month period. Management should consider the relative nature of all infractions for disciplinary purposes.

**Termination Option Exercised.**

Failure to correct behavioral deficiencies results in discharge by the Company. Three notifications of deficiency within a 12-month period normally result in termination. However, an employee's entire employment history should be considered. Based on the severity of the occurrence, an employee may be terminated with less than three notifications of deficiency within a 12-month period. Management is responsible for thoroughly reviewing an employee's disciplinary record with the Company and exercising judgment in determining appropriate action.

**REFER TO 4-90 Termination, Termination Letter**
guideline.

**Termination Option Not Exercised.**

If a manager chooses not to discharge an employee who has 3 notifications of deficiency, the manager must prepare a written explanation of the rationale and maintain it permanently in a department/station file. An information copy must be sent to the matrix Human Resources manager. A written explanation must also be maintained if action taken does not conform to departmental standards of performance guidelines.

**Recurrent Patterns.**

Employees must understand that recurrent patterns of misconduct are noted and cannot be tolerated. An employee's entire employment history is reviewed and taken into consideration when evaluating recurring patterns of misconduct. Issuance of a warning letter for a deficiency which has been addressed previously through 2-5 Acceptable Conduct can result in more severe action up through termination.

## Documentation and PRISM Entry

Management must completely document all actions taken by management related to misconduct. All notifications of deficiency (i.e., counsellings, warning letters/reminders, termination letters, and disciplinary suspension documents should contain

- date of infraction

- facts supporting the suspension, warning letter, reminder, and/or termination

- policy violated

- a reference to the employee's privilege to pursue the procedure in 5-5 Guaranteed Fair Treatment Procedure/EEO Complaint Process

When an employee receives any form of counseling, i.e., a verbal counseling, or a written counseling, the manager must enter the information into the Online Documented Compliment/Counseling (OLCC) system in PRISM.

After its entry, the employee must immediately log onto the Online Documented Compliment/Counseling Acknowledgment (OLCCACK) PRISM screen and verify his/her knowledge of the entry. If the employee refuses to acknowledge a counseling, a witness (another member of management, a Human Resources representative, or a Human Resources manager) must immediately log onto the PRISM Online Documented Compliment/Counseling Acknowledgment (OKCCACK) system to witness the counseling.

The OLCC screen is for entry of documentation. Managers may view an employee's notification history by accessing the Letters screen in PRISM. (The Letters screen may be accessed by keying in either "letters," "reminder," or "warning."

 Documented counsellings are ineligible for the GFTP process. (See 5-5 Guaranteed Fair Treatment Procedure/EEO Complaint Process.)

## Verification/Retention of Disciplinary Notifications

An employee's signature confirms receipt of any disciplinary letter. When an employee refuses to sign a disciplinary letter, a witness (preferably another manager) must confirm receipt or the receipt should be verified through some other means (e.g., proof of delivery). The manager must

- retain all documents

- provide a copy to the employee and matrix Human Resources representative

- forward a copy to the Human Resources Information Control Center (HRICC) for retention in the employee's personnel file

## Discharge Approval

Two levels of line management and a matrix Human Resources staff member must approve all discharges based on misconduct when the individual holds a managing director or below position. For positions above managing director, the matrix Human Resources managing director should be consulted.

## Criminal Charges

### Employee Responsibility

All employees are responsible for notifying their manager no later than the next business day if they have been charged, arrested, or indicted for any criminal (felony or misdemeanor) offense. This includes reporting driving violations and accidents as outlined in <u>4-48 Driving Qualifications</u> and <u>8-90 Vehicle Accidents/Occurrences</u> when your position is covered by these policies. However, when there is a resulting criminal charge from an accident, all employees must report the charge. "False arrests" must also be reported. Failure to do so may result in disciplinary action, up to and including termination.

### Management Responsibility/Employee Suspension

Upon notification that an employee has been charged, arrested, or indicted for a criminal offense, management should immediately take the employee's written statement in order to begin an investigation. Once the written statement is received, management should obtain the employee's identification badge and place the employee on investigative suspension with pay so an investigation into the job-relatedness of the conduct underlying the criminal offense may be completed. With assistance from the matrix Human Resources representative, and the Security and Legal departments, management's investigation should include the employee's written statement, a copy of the arrest record or police report or any other official documentation, and witness statements (when applicable).

 A written statement from the employee is not required if the employee is incarcerated.

### Incarceration

FedEx Express does not allow employees time off for time spent in jail. If an employee is scheduled to work and calls in requesting time off while incarcerated, the employee should be considered as unavailable for work and appropriately disciplined, up to and including termination.

### Job-Relatedness Determination/Procedure

The crime's classification (i.e., felony or misdemeanor) is not as important an issue as the underlying conduct itself. For example, crimes that are related to illegal use and possession of drugs are considered job-related based on Corporate policy, regardless of whether the crime is classified as a felony or

misdemeanor. However, a DUI charge in which an employee is in his private vehicle is not job-related unless the individual holds a position that requires driving a Company vehicle. Crimes such as shoplifting and theft should be thoroughly evaluated for job-relatedness and discussed with the matrix Human Resources staff. Each charge must be considered on a case-by-case basis. Table 1 outlines the procedure to be followed when an employee has been charged, arrested, or indicted for a criminal offense.

If it is determined that the conduct underlying the criminal offense is job-related, and the employee either admits to engaging in the conduct or the evidence clearly establishes the employee engaged in the conduct, the employee is disciplined or terminated as appropriate.

If it is determined that the conduct underlying the criminal offense is job-related, but it cannot be concluded that the employee engaged in the conduct, then the employee's paid suspension is converted to a suspension without pay pending resolution of the charges against the employee or the acquisition of additional information that will allow management to make a final decision. (See Table 1.)

It is the employee's responsibility to provide management with the disposition/resolution of the criminal matter. If the criminal charges are not resolved within 18 months of the original charge, the status of the criminal proceeding will be reviewed by the manager, Human Resources representative, and the Legal Department to determine action to be taken regarding the employee's employment status.

**Table 1**
**Procedure When Employee Charged, Arrested, or Indicted for a Criminal Offense**

| | |
|---|---|
| Employee | 1. Notifies manager no later than next business day after the occurrence, i.e., arrest, indictment, charge. |
| Manager | 2. Upon discovery of or upon notification by the employee of an arrest, indictment, or charge, suspends employee with pay so an investigation can be conducted to determine the job-relatedness of the conduct. (See Investigative/Disciplinary Suspensions guideline.) |
| Management | 3. With Security, Human Resources, and Legal departments, conducts investigation.<br><br>a. If the conduct involved is determined to not be job-related, returns employee to work.<br><br>b. If conduct is determined to be job-related and it is not known if the employee engaged in the conduct, suspends employee without pay pending resolution or more information.<br><br>c. If conduct is determined to be job-related and it is confirmed that the employee did engage in the conduct, disciplines or terminates the employee.<br><br>⚠ See Disposition and Employment/Pay section below. |

**Disposition and Employment/Pay**

The disposition (conviction, "no contest" plea, acquittal, dismissal without prosecution or diversion) does not automatically determine whether an employee is retained or terminated. The decision to return the employee to active status or terminate depends upon the impact such disposition and the relevant facts have on other employees, the Company, and current or potential customers. Suspended employees who are permitted to return to work after resolution of the charge may be entitled to back pay, not to exceed a 90-day period. The issue of back pay is determined at the officer level of the division and each case is reviewed individually.

The decision to continue employment with the Company is made by management and matrix Human Resources upon consultation with the Legal Department. The decision should be based on

- The severity of the charge

- The employee's past work history

- The relationship of the charge to the present job function

- Other mitigating circumstances

## Employment at Will

The employment relationship between the Company and any employee may be terminated at the will of either party as stated in the employment agreement signed upon application for employment. As described in that agreement, the policies and procedures set forth in this manual provide guidelines for management and employees during employment but do not create contractual rights regarding termination or otherwise.

## Employee Response/Complaints

Any employee who feels he is the recipient of unwarranted discipline should discuss the problem informally with his manager and/or his matrix Human Resources staff, and/or use the procedure in 5-5 Guaranteed Fair Treatment Procedure/EEO Complaint Process 282.

## Related Policies

- 1-5 Medical Absence Pay—Exempt and Nonexempt Salaried

- 1-6 Leave of Absence (Medical)—Exempt/Nonexempt Salaried

- 1-7 Medical Absence Pay–Merit Hourly

- 1-8 Leave of Absence (Medical)–Merit Hourly

- 1-20 Attendance

- 1-45 Leave of Absence (Family)

- **1-50 Leave of Absence (Military)**

- **1-55 Leave of Absence (Personal)**

- **2-10 Alcohol and Drug-Free Workplace**

- **2-50 Performance Improvement**

- **2-70 Code of Business Conduct**

- **4-15 Career Opportunity**

- **4-48 Driving Qualifications**

- **4-90 Termination**

- **5-5 Guaranteed Fair Treatment Procedure/EEO Complaint Process**

- **7-35 Employee Reduced-rate Shipping and FedEx Kinko's Discount**

- **7-47 Jumpseat**

- **8-10 Firearms/Weapons**

- **8-30 Identification of Personnel**

- **8-80 Security**

- **8-90 Vehicle Accidents/Occurrences**

- **10-55 Solicitation and Distribution**

## Related Publication

- *The Profit Manual*

- *The Safety Manual*

- The Information Security Standards

---

WARNING: This site contains information and procedures applicable only to employees of Federal Express Corporation (FedEx Express). Employees of other affiliated FedEx companies should refer to the sites applicable to their respective affiliated company.

Search   Online Library   FedEx Home
Revision Highlights   Contents   Pub Info

Top | Prev | Next

Search *The People Manual (USA)*: [                    ]  🔳

A product of HR Measurement and Support. Your

Case 1:06-cv-21457-CMA    Document 35    Entered on FLSD Docket 10/03/2006    Page 42 of 73

feedback is welcome.

Copyright © 1981–2005, Federal Express Corporation
unpublished. All rights reserved.
ISO 9001 controlled document. Contents subject to change.
Printed and other static representations of this data are classified
"for reference only."

# EXHIBIT 4



**The People Manual (USA)**


prev next

Chapters

Search
Library
FedEx Home

Revision
Highlights
Contents
Pub Info

Key Policies
Tables
Figures
Index

# 10-95 Workplace Practices

### (Last Revised 23 Nov 2003)

## Policy

FedEx Express is committed to providing a healthy and safe environment for employees and ensuring guidelines are established for daily workplace practices.

## Scope

All FedEx Express employees

## Guidelines

## Smoking Tobacco Products

In keeping with FedEx Express's commitment to providing a healthy work environment, smoking and the use of other tobacco products is prohibited in all Company buildings, facilities, and vehicles.

All FedEx Express employees are further prohibited from smoking and using other tobacco products while in Company-sponsored vanpools or Company vehicles and aboard all FedEx Express aircraft at all times.

### Designated Smoking/Tobacco Use Areas/Times

Employees who wish to smoke or use other tobacco products may do so in areas outside FedEx Express buildings and facilities, except in areas where smoking or the use of other tobacco products would pose a safety hazard to property or employees (i.e., aircraft ramp areas). Smoking or the use of other tobacco products in designated areas is allowed only during scheduled breaks and the meal period.

### Violations

The compliance with this policy should be handled in accordance with existing Company policies. Although the use of tobacco products in itself is not considered a basis for discipline, failure to abide by these guidelines may result in disciplinary action as outlined in 2-5 Acceptable Conduct.

## Meals/Rest Breaks

FedEx Express provides a meal period for eligible employees. In states where lunch periods are mandatory, employees are provided lunch breaks according to each states' particular laws. Some states also require rest breaks. Managers review the Personnel Legal Manual for information concerning applicable state laws on lunch periods and rest breaks.

**Exhibit No. 4**

Case 1:96-cv-21457-CMA Document 35 Entered on FLSD Docket 10/03/2006 Page 45 of 73

Full-time employees are normally scheduled to work 8- or 10-hour shifts and should be provided a meal period of 30 minutes to 1 hour in duration. Depending on the length of the work shift, part-time, casual, and temporary employees are provided meal periods in accordance with state laws and work scheduling requirements.

Meal periods should be scheduled at mid-shift (1 hour before or after the middle of the shift). Meals should be eaten in designated areas away from the employee's work station or area.

Employees are advised of meal periods by their manager. Meal periods are nonpaid and are normally 30 minutes to 1 hour in duration, as determined by location or by departmental guidelines.

## Parking

FedEx Express designates parking areas, when available, for vehicles belonging to employees, visitors, and handicapped/disabled individuals.

At certain Corporate locations there are designated and open parking areas. Due to the number of vehicles and employees and the need for an orderly parking system, it may become necessary to tow improperly parked vehicles. Contact Corporate Security for information concerning specific locations.

## Housekeeping

The Company's premises are always under observation by our customers, prospective customers, members of the press, and other individuals. Therefore, we must present a professional appearance at all times. Employees are responsible for keeping work areas and smoking areas clean and may be required to perform facility maintenance duties in order to meet this objective.

Employees should not be required to clean restrooms or toilets beyond the normal courtesies for the next person. Managers should assign cleaning or maintenance duties to all employees on an equitable basis taking into consideration other operational and customer requirements.

## Access to Company Property Restriction

Non-FedEx Express individuals are not allowed to have access to the Company ramp/sort areas and mechanical operations except

- When part of an official Company-sponsored tour.

     An official Company-sponsored tour must be scheduled through Public Relations for Memphis location and through the local tour program for all field locations.

- When based on a business need and the individuals are accompanied by a FedEx Express manager or manager designee at all times. All requests for access for business needs in field locations must be approved in advance by the managing director responsible for the facility.

Case 1:06-cv-21457-CMA   Document 35   Entered on FLSD Docket 10/03/2006   Page 46 of 73

- When employed by a Government Agency performing official duties, including Airport Police, Law Enforcement, NTSB, U.S. Customs, FAA, and authorized government inspectors with the appropriate credentials approved by the FAA/Airport Authority, and accompanied by a FedEx official.

Violations of this guideline may result in disciplinary action up to and including termination.

## Emergency Situations/Communication

If an emergency situation occurs involving an unusual employee incident such as serious injury, accident, or death while on the job, management should contact the Legal Department immediately after initiating appropriate emergency response and control actions. If the incident occurs after hours, Global Operations Control Command (GOCC) should be requested to contact a member of the Safety and Legal Departments.

All inquiries from the media should be referred to the Public Relations Department (through GOCC when necessary).

If a serious incident occurs, local management may notify the employee's family and refer the family members to the appropriate department for additional information. A local management representative should assist the family and maintain primary contact responsibility for the family with all FedEx Express departments (e.g., Benefits, Safety, and Legal Departments). Management should cooperate fully with all local authorities such as police, fire department, etc.

## Operational Emergencies/Communications

Operational emergencies are handled in accordance with 10-15 Emergency Work Rules and 1-22 Business Closings/Inclement Weather.

## Related Policies

- 1-22 Business Closings/Inclement Weather

- 2-5 Acceptable Conduct

- 2-10 Alcohol and Drug-Free Workplace

- 8-10 Firearms/Weapons

- 8-80 Security

- 10-15 Emergency Work Rules

## Related Publication

- *Personnel Legal Manual*

Search   Online Library   FedEx Home
Revision Highlights   Contents   Pub Info

Top | Prev | Next

WARNING: This site contains information and
procedures applicable only to employees of Federal
Express Corporation (FedEx Express). Employees of
other affiliated FedEx companies should refer to the
sites applicable to their respective affiliated company.

Search *The People Manual (USA)*: [                    ]

A product of HR Measurement and Support. Your
feedback is welcome.

Copyright © 1981–2005, Federal Express Corporation
unpublished. All rights reserved.
ISO 9001 controlled document. Contents subject to change.
Printed and other static representations of this data are classified
"for reference only."

# EXHIBIT 5

# 8– Meal Period
Revised 01 Aug 2000
## Guideline
FedEx Express provides meal periods for eligible employees.
## Scope
Applies to all hourly employees in U.S. Ground Operations except those who are assigned a split shift. Employees working split shifts must use the extended break between shifts for meals.
## Procedures
### Length of Meal Break
Employees may be scheduled for meal breaks of 30–60 minutes.
Meal breaks should not normally be scheduled to exceed 60 minutes. However, meal breaks up to 90 minutes may occasionally be scheduled if required by unusual circumstances.
### Scheduling Meal Breaks
The meal should normally occur between the third and sixth hour as the work load permits. Meal breaks taken near the beginning or end of a shift are discouraged unless required by an operational emergency.
### Compliance with State Laws
In states where meal breaks are regulated by state law, employees must be provided meal breaks in compliance with the law. Refer to the *Personnel Legal Manual* for details.
### Management Responsibilities
Management is responsible for including a meal break and specifying the amount of time to be taken in the employee's work schedule.
### Employee Responsibilities
Employees are required to take scheduled meal breaks. Prior management approval is required for an employee to work instead of taking the normal meal break. The approving manager must indicate approval by signing the employee's time card. In all cases, employees must enter the correct codes on their time cards to indicate the length of their meal break. Prior management approval is required if an employee is unable to take their required meal break. The approving manager must indicate approval by signing the employee's time card. In all cases, the employee must enter the correct codes on their time card.
### On-Road Employees
FedEx Express provides a meal period for eligible employees consistent with each state's particular law regarding meal breaks. Consult your Personnel Representative for more details on your state's regulations. On-road employees are allowed a reasonable amount of travel time and mileage at the beginning and end of their meal break in order to travel to and from an appropriate meal break location. Leaving your route boundaries for the purposes of a meal break is prohibited without prior management approval.
The Senior Manager may use discretion when determining time requirements on rural routes.
## Related Policies
P10-95 - Workplace Practices

Back to top

Copyright © 2003 Federal Express Corporation unpublished. All rights reserved.
ISO controlled document. Contents subject to change.
Printed and other static representations of this page are classified "for reference only."
Maintained by HR Measurement & Support
Last updated August 2003

Exhibit No. 5

# EXHIBIT 6

# 19– Split Shifts
Revised 01 Aug 2000
## Guideline
FedEx Express uses a limited number of split shift schedules to provide additional full-time employment opportunities and to use our workforce efficiently.

## Scope
Applies to all permanent hourly employees in Ground Operations and Ramp Operations.

## Procedures
A **split shift** is a work schedule with a minimum break of two hours at approximately midshift. The break is normally not scheduled to exceed four hours. All employees may be required to work a split shift schedule two days within the corporate work weekc

A **weekly split shift** is a work schedule of three or more split shift days within the corporate workweek. Mandatory weekly split shift schedules may not exceed 20% of the nonexempt work schedules within a district. (Divide the number of employees working a mandatory split shift by the total number of employees to determine the percentage of mandatory split shifts.)

### Premium Pay
Employees who work an approved split shift receive a premium for all hours worked on that day. Premium amounts are published by the Compensation Department on wage rate schedules and may be changed periodically in conjunction with pay reviews. Refer to appropriate compensation policies in *The PEOPLE Manual* for additional information on pay premiums and their relationship to overtime, etc. Failure to take the minimum two hour break negates split shift premium pay for the day.

### Guaranteed Hours and Time Frames for Shifts
Employees who work all scheduled hours of a split shift are guaranteed seven hours of pay per split shift day. The break should be scheduled at or near the middle of the shift with a minimum of 2.5 hours per work period.

### Famis Reporting
Premium pay is automatically provided to employees who report a two hour break or more on their FAMIS time card unless the break is in conjunction with layover, report-in, or call-in pay. Mandatory meetings or training qualify the employee for the split shift premium if applicable.
**Note:**
To cancel split shift premium pay in FAMIS, type "X" or "1" in the *NSS* (Not Split Shift) field.
Management must cancel the split shift premium pay when the extended break is not approved by management or is taken for personal reasons. When the premium pay is canceled, the cancellation must be noted on the hard copy of the employee's time card.

### Split Shift Assignments
Mandatory split shift assignments are made on the basis of least continuous service.
Management should ensure that employees assigned to mandatory split shifts have access to a comfortable break area or that a vehicle is available for the employee's use.

Employees may volunteer to work split shift schedules. Split shift schedules in excess of the 20% mandatory limitation may be assigned on a voluntary basis only.

Employees who volunteer to work a weekly split shift schedule may return to a continuous-shift schedule with 30 days' notice. A written request must be submitted to management. An employee working a voluntary split shift, however, may be redesignated as mandatory on the basis of continuous service.

**Dot and Safety Requirements**

All applicable safety regulations must be followed. For DOT positions, total time worked must be in accordance with Department of Transportation (DOT) requirements (refer to "Hours of Service" in the *Safety, Health, and Fire Prevention* manual). Break time is included in the total hours if the employee is not relieved of all duties.

**Vehicle Placement During Breaks**

When feasible, the vehicle should be returned to the station during the split shift break. If the employee is authorized to retain the vehicle, management is responsible for providing guidelines for vehicle placement (parking area) to maintain an appropriate Company image.

**Management Responsibilities**

When split shifts are established, management has the following responsibilities:

- Establish a split shift program only after you have used all other possible methods of optimizing staffing.
- Tell your employees when you are going to make split shifts available. Explain the conditions of split shifts, the requirements for eligibility, and how to submit their requests.
- Select employees for split shifts according to their eligibility.
- Initiate an Employee Record Information Authorization in PRISM to change the status of the affected employee(s).

**Note:**
Your District Service Engineer can help. If you're thinking of establishing a split shift schedule, ask them to review your operations and determine whether it's advisable to use split shifts.

**Employee Responsibilities**

Employees interested in a split shift must submit dated, written requests to management at their location.

## Related Policies

P3-35 - Corporate Pay Premiums
P1-45 - Categories of Employment

Back to top

# EXHIBIT 7

   **5-5 Guaranteed Fair Treatment Procedure/EEO Complaint Process**   

(Last Revised 23 Nov 2003)

**Policy**    FedEx Express provides a procedure for handling employee complaints, problems, concerns, and allegations of employment discrimination.

An employee's right to participate within the guidelines of the process is guaranteed, although the outcome is not ensured to be in the employee's favor.

**Scope**    All permanent employees except employees represented by a collective bargaining agreement

**Guidelines**

**Eligibility**    All employees who receive discipline, including termination, or treatment that they believe to be unfair are eligible to participate in the GFTP/EEO process.

**Eligible Issues**    Issues eligible for consideration in the GFTP/EEO process include the following:

- selections
- application of compensation and benefit policies
- disciplinary actions, including terminations
- performance reviews
- all allegations of discriminatory employment practices based on an employee's race, color, sex, sexual orientation, religion, national origin, age, physical or mental handicap/disability, or veteran status including all allegations of sexual harassment
- Discipline resulting from an EEO investigation may proceed directly to GFT Step 2. Step 2 is the final step for discipline resulting from an EEO investigation.

---

NOTE:   When an employee adds an allegation of discrimination or sexual harassment after entering the GFTP process, the GFTP is deferred until allegations of employment discrimination are resolved. The steps outlined in **Table 2** should be followed. If an employee receives discipline as a result of the EEO investigation, the employee may proceed to Step 2 of the GFT Procedure as outlined in **Table 1**. Step 2 is the final step for discipline resulting from an EEO investigation.

---

---

NOTE:   Employees terminated for drug, alcohol, or falsification of the employment application related to a criminal event (arrest, conviction, etc.) should proceed to Step 2 of the GFTP process.

---

**Ineligible Issues**    Issues not eligible for consideration in the GFTP/EEO process are those seeking a change in or review of the following:

- work assignments
- hours of employment
- compensation rates and grade levels
- content of benefit policies
- content of Corporate policies and procedures
- decision to suspend with pay pending further investigation
- denial of a request for case review by the Accident/Occurrence Appeals Board
- discipline initiated by the Appeals Board
- documented counseling
- other issues defined as inappropriate by the Appeals Board
- clearance denial by the United States Postal Service for a position involving handling or access to U.S. mail and subsequent termination of a new hire because clearance was denied.
- clearance denial of an internal applicant by the USPS for a position involving handling or access to U.S. mail.

Exhibit No. 7

---

**NOTE:** Employees are permitted to utilize the GFTP process for resolution regarding work assignments that are presumed to be unsafe or where no training has been provided.

---

**Initiating a GFTP (Nondiscrimination) Complaint**

**Active Employees.** Employees who wish to initiate a complaint to resolve a concern unrelated to alleged discrimination must hold an open and frank discussion as soon as possible with their immediate manager before entering the process.

If the complaint is with a member of management in another division, the employee must have an open and frank discussion with a member of management in that division before entering the process.

If the discussion is unsatisfactory, the employee must submit an electronic GFTP request via the GFTPP screen in PRISM within 5 calendar days of the occurrence of the eligible issue. The complaint will be forwarded automatically at each step to the appropriate members of management and matrix human resources. (See **Table 1**.)

> EXCEPTION In situations where computer terminals are not available, employees may submit at each step a written complaint to the appropriate members of management, with a copy to the matrix Human Resources representative for entry into the GFTPP monitoring and tracking system.

**Terminated Employees.** At each step in the process, the appropriate GFTP bubble form and questionnaire for terminated employees must be completed and forwarded to FedEx Express, 3975 Airways, 2nd floor, Module E, HRIS-GFTP, Memphis, Tennessee 38116.

At each step in the process, all nondiscrimination complaints must be submitted within 5 calendar days of the occurrence of the eligible issues or receipt of GFTP response. (See **Table 1**.)

That division's chain of command should be followed throughout the process.

**Benefits Related GFTP/ EEO Process**

When a GFT is filed that is related to benefits, (e.g., medical leave of absence) is not resolved at Step 2, Step 3 of the GFT process is delayed until resolution of the benefits issue through the benefits appeal process.

**Steps In the GFTP/EEO Process**

The GFTP/EEO process for nondiscrimination issues is a 3-step process that requires specific individuals to perform specific actions within a designated timeframe (see **Table 1**). The steps in the GFTP process for non-discrimination issues are:

1. Management review

2. Officer review

3. Appeals Board

**Appeals Board**

**Participants.** The Appeals Board consists of five management members.

The permanent members are:

1. the chief executive officer (CEO)
2. the executive vice president (EVP) and chief operating officer (COO)
3. the chief human resources officer (CHRO)

The rotating members are:

4. one senior vice president
5. one vice president

All permanent members should all be present at all Appeals Board meetings. If this is not possible, a permanent member is required to chair the board. Three members constitute a quorum.

In the absence of the CEO, the executive vice president and chief operating officer serves as chairman.

One senior vice president serves on the board on a 2-month rotation basis. The senior vice president can delegate to a vice president for an absence.

One vice president also serves on a 2-month rotation basis. Vice presidents who are selected to serve must live in Memphis, and have been a vice president for 12 months. The selected vice president must find a replacement when unavailable to attend the Appeals Board meeting. This replacement must be a vice president or a senior vice president.

**Final Decisions.** Since the Appeals Board is the last step in the GFTP, all of its decisions are final and binding on the Company and the employee.

**Administrator.** The Appeals Board administrator is responsible for the administrative function of the Appeals Board. At the board's direction, the administrator has the authority to act on their behalf and to carry out their instructions and decisions. A member of management in the HR Compliance Department signs the letters as administrator of the Appeals Board.

All resolution disputes arising during the GFTP/EEO process are referred to the Appeals Board administrator for evaluation and final resolution by the Appeals Board. The Appeals Board administrator has the authority to remand cases to the lower levels for resolution.

**Alternate Resolution Process**

At the discretion of the Company, an Alternate Resolution Process may be used as part of the GFTP/EEO process in certain types of cases.

For more information on the Alternate Resolution Process, contact your matrix Human Resources representative or the HR Compliance Department.

**Board of Review**

The decision to initiate a Board of Review is within the sole discretion of the senior vice president/vice president at step 2 or the Appeals Board at step 3. **This is not a formal step in the appeal process but is an option available to the senior vice president/vice president or the Appeals Board.**

---

NOTE:   Discrimination and sexual harassment allegations are not eligible for consideration by a Board of Review. If allegations of employment discrimination surface during a Board of Review, notify the Appeals Board administrator. The board can proceed on the fair treatment issues.

---

**Participants.** When initiated, a Board of Review is composed of

- a panel of five voting members
- a chairperson (nonvoting)
- an HR Compliance representative (nonvoting)
- a representative of matrix Human Resources (nonvoting)
- the complainant (nonvoting)
- the manager (nonvoting)
- witnesses (nonvoting)
- observers (nonvoting)

Observers must be FedEx Express employees. Their attendance at or removal from a Board of Review is at the chairperson's discretion.

If an employee is granted a Board of Review and is not present for the Board of Review, the case is automatically forfeited unless it is rescheduled by HR Compliance due to extenuating circumstances. Management is also required to be present.

**Final Decisions.** The decision of a Board of Review initiated at step 2 by a senior vice president may be appealed to the Appeals Board. However, the decision of a Board of Review initiated at step 3 by the Appeals Board may not be appealed. All Board of Review recommendations become final after confirmation by the Appeals Board.

For more information on the Board of Review process, contact the HR Compliance Department or the matrix Human Resources representative.

**Initiating an Internal EEO Discrimination or Harassment Complaint**

Employees who wish to initiate an employment discrimination or harassment complaint should discuss their concerns with a member of management, Human Resources, or HR Compliance. The employee will then receive an Employee Information Statement form to complete and return. All complaints will be promptly and thoroughly investigated in as confidential a manner as possible. If the complaint is submitted to a member of management, copies should be forwarded to the matrix Human Resources representative/management and HR Compliance within 48 hours.

Employees are protected by the Company and federal statutes from coercion, intimidation, retaliation, interference, or discrimination for filing a complaint or assisting in a complaint. FedEx Express specifically prohibits such action on the part of its management and other employees.

Before the resolution of any discrimination or harassment complaint, an employee may not be involuntarily transferred, reassigned, or subjected to any punitive action without concurrence of the matrix Human Resources management, HR Compliance, and the Legal Department.

**Steps in the GFTP/EEO Internal EEO Discrimination or Harassment Procedure**

The employment internal EEO discrimination or harassment complaint procedure is a 1-step process that requires specific actions to be performed by specific individuals. See **Table 2**.

**Investigation Responsibilities.** An investigation is not initiated or discontinued without approval or concurrence from the Legal Department. An e-mail must be received from Legal before investigating or taking any disciplinary actions on all employment discrimination issues. The managing director may designate specific duties to matrix human resources and/or another member of management. The managing director is responsible for the content of the report and accountable for meeting the timeframes in the process.

**Final Decisions.** All decisions relating to employment discrimination complaints are final and binding on the Company and the employee.

For more information on the employment discrimination complaint process, contact the HR Compliance Department or the matrix Human Resources representative.

**Exclusive Remedy**

The GFTP/EEO process is the exclusive remedy for all disputes or work-related complaints arising from an employee's employment or termination from employment. As described in the employment agreement signed upon application for employment, the policies and procedures set forth by the Company provide guidelines for management and other employees during employment, but do not create contractual rights regarding termination or otherwise.

**Maintaining Communication**

Employees must keep management and HR Compliance advised of any change in their address or telephone number to maintain communication and timeliness throughout the GFTP/EEO process.

**Confidential Communications/ Documents**

All internal documents, including E-mails, investigative notes and materials generated in the course of the GFTP/EEO process, including without limitation, internal EEO and harassment investigations are confidential and subject to various legal privileges against disclosure. Circulation, distribution, or discussion of this information is strictly limited to those who have a need to know its content. Written or oral release of the contents of this information beyond this limited circulation must be approved by the Legal Department.

**Third-party Representation**

Attorneys are not permitted to serve as advocates on behalf of the Company or employees, nor to appear on behalf of employees or former employees or submit letters directly to the Company on behalf of employees or former employees in the GFTP/EEO process. Attorneys or other such representatives are directed to contact the Legal Department. No third party is permitted to participate in any manner in the GFTP/EEO procedure.

**Related Policies**

- 2-5 Acceptable Conduct
- 2-50 Performance Improvement
- 4-48 Driving Qualifications
- 4-90 Termination
- 5-15 External EEO Complaint Investigation
- 5-35 Disabled
- 5-40 Open Door
- 5-55 Anti-Harassment
- 5-70 Survey/Feedback/Action (SFA) Program
- 8-90 Vehicle Accidents/Occurrences

**Related Publications**

- *The Board of Review Manual*

---

NOTE:   These manuals are maintained by the HR Compliance Department.

---

Table 1
Steps in Guaranteed Fair Treatment Procedure/EEO Complaint Process
(For Nondiscrimination Issues)

| REQUIRED ACTION | TIMEFRAME |
|---|---|
| **Complainant** | |
| • Submits electronic request via the GFTPP screen in PRISM. | Within 5 calendar days of occurrence of eligible issue |
| 1. Terminated employees must complete the step 1 GFTP bubble form and question-naire. These documents must be forwarded to FedEx Express, 3975 Airways, 2nd floor, Module E, HRIS-GFTP, Memphis, TN 38116. | |
| 2. Employees terminated for drugs, alcohol, falsification of the employment application related to a criminal event (arrest, conviction, etc.), or LOA issues (maximum duration and permanent restriction and limitation) should proceed to Step 2 of the GFTP/EEO process. | |
| 3. For LOA cases, Step 2 will consist of the Corporate Human Capital Management Committee (CHCMC). | |
| **Human Resources** | |
| • Enters complaint into the GFTPTRAK when complaint is not submitted via the GFTPP system. | Immediately upon receipt |
| **Manager, Sr. Manager, and Managing Director** | |
| • Review all relevant information. | NOTE: When multiple levels of management exist, a consensus decision is rendered. All of the step 1 Required Actions must occur within 10 calendar days of receipt of the complaint, unless written notice of time extension is provided to the complainant and Human Resources. |
| • Hold a telephone conference and/or meeting with the complainant. | |
| • Make decision to either uphold, modify (up or down), or overturn management's action. | |
| • Communicate decision in writing to complainant and Human Resources matrix. | |
| NOTE: If complainant raises an issue of discrimination or harassment after entering the GFTP process, the GFTP is deferred until all employment discrimination or harassment issues are resolved. See **Table 2.** | |
| **Complainant** | |
| • Updates electronic request via the GFTPP screen in PRISM. | Within 5 calendar days of receipt of step 1 response |
| NOTE: Terminated employees must complete the step 2 GFTP bubble form. This document must be forwarded to FedEx Express, 3975 Airways, 2nd floor, Module E, HRIS-GFTP, Memphis, TN 38116. | |
| **Vice President and Senior Vice President** | |
| • Review all relevant information. | NOTE: When multiple levels of management exist, a consensus decision is rendered. All of the step 2 Required Actions must occur within 10 calendar days of receipt of the complaint, unless written notice of time extension is provided to the complainant and Human Resources. |
| • Conduct additional investigation, when necessary. | |
| • Obtain technical support from HR Compliance, Legal, and matrix Human Resources, when necessary. | |
| • Make decision to either uphold, overturn, modify (up or down) management's action, or initiate a Board of Review. | |
| • Communicate decision in writing to complainant with copy to matrix Human Resources and the complainant's management. | |
| NOTE: If complainant raises an issue of discrimination after entering the GFTP process, the GFTP is remanded to step 1 and the procedures in **Table 2** should be followed. | |
| NOTE: If a GFT related to benefits (i.e., medical leave of absence) is not resolved at Step 2, the GFT process is delayed until resolution of the benefits issues through the benefits appeal process. | |

(Sheet 1 of 2)

Table 1
Steps in Guaranteed Fair Treatment Procedure/EEO Complaint Process
(For Nondiscrimination Issues)  (Continued)

| REQUIRED ACTION | TIMEFRAME |
|---|---|
| **Complainant** | |
| • Updates electronic request via the GFTPP screen in PRISM.<br><br>NOTE:  Terminated employees must complete the step 3 GFTP bubble form. This document must be forwarded to FedEx Express, 3975 Airways, 2nd floor, Module E, HRIS-GFTP, Memphis, TN 38116. | Within 5 calendar days of receipt of step 2 response |
| **HR Compliance** | |
| • Investigates and prepares case for Appeals Board. | NOTE:  All of the step 3 Required Actions must occur within 10 calendar days of receipt of the complaint, unless written notice of time extension is provided to the complainant and Human Resources. |
| **Appeals Board** | |
| • Reviews all relevant information.<br><br>• Makes decision to either uphold, modify (up or down), overturn, initiate a Board of Review, or take other appropriate action.<br><br>NOTE:  All actions, as a result of the Appeals Board decision, will be at the direction of the Appeals Board administrator. | Within 1 calendar day of decision |
| **Appeals Board Administrator** | |
| Communicates decision in writing to complainant with copy to the matrix Human Resources, and the complainant's management.<br><br>NOTE:  If complainant raises an issue of discrimination after entering the GFTP process, the GFTP is remanded to step 1 and the procedures in Table 2 should be followed.<br><br>NOTE:  When necessary, an adjustment of the remedy already imposed upon an employee, including imposition of more severe or greater discipline, will be made to protect the Company, other employees, the general public, and the safety of our operation. | |

(Sheet 2 of 2)

Table 2
Internal EEO Discrimination or Harassment Complaint Procedure

| REQUIRED ACTION | TIMEFRAME |
|---|---|
| **Complainant** | |
| • Discusses concerns with management, Human Resources, or HR Compliance Department or obtain an Employee Packet. | As soon as possible following alleged discrimination |
| • Submits Employee Information/Statement forms to management, Human Resources, or the HR Compliance Department. | NOTE: While it is not always possible to conform to the time frames listed, it is strongly encouraged that they be followed. |
| **All FedEx Express Management, all Matrix Human Resources Representatives, HR Compliance** | |
| • Upon receipt of discrimination or harassment complaint, provides the employee with an Employee packet and obtains a signed statement, if possible. | Immediately (same day) |
| **All FedEx Express Management, all Matrix Human Resources Representatives** | |
| • Forwards complaint and documentation to the HR Compliance Department in Memphis. | Immediately upon receipt (same day) |
| NOTE: An investigation should not begin until an e-mail is received from the Legal Department. | |
| **HR Compliance** | |
| Upon receipt of a complaint | Immediately upon receipt |
| • Requests an e-mail from Legal approving or denying initiation of an investigation | |
| • Determines what information/documentation should be gathered | |
| • Identifies appropriate individual, e.g., managing director or matrix Human Resources representative, to facilitate investigation. | |
| **Managing Director or Designee or Matrix Human Resources Representative** | |
| Upon receipt of an e-mail from Legal | Within 3 calendar days of receipt of Employee Information/Statement forms and an e-mail from Legal |
| • Holds conference or meeting with the complainant. | |
| • Develops appropriate questions in response to employee's allegations and conducts investigation. | |
| • Secures necessary documentation and other information as requested by HR Compliance. | Within 10 calendar days of employee conference/meeting. |
| • Obtains advice from HR Compliance, human resources, or legal departments. | Throughout investigation |
| • Submits draft of EEO Investigative Report to HR Compliance. | Within 5 calendar days of completing the investigation |
| **HR Compliance and Legal** | |
| • Reviews Investigative Report and directs further investigation and interviews as necessary. | Within 3 calendar days of receipt |
| • Provides approval of Investigative Report draft and recommended resolution of the complaint. | |
| NOTE: In the event there are resolution difficulties at this step, the HR Compliance Department, in conjunction with Legal and Human Resources, determines the appropriate remedy consistent with Company policy and applicable EEO laws and regulations. If resolution difficulties remain, the chief Human Resources officer and general counsel will make the final decision. | |
| **Managing Director or Designee/Matrix Human Resources Representative** | |

(Sheet 1 of 2)

Table 2
Internal EEO Discrimination or Harassment Complaint Procedure (Continued)

| REQUIRED ACTION | TIMEFRAME |
|---|---|
| • Submits final approved EEO Report with supporting documentation to vice president/ senior vice president with a copy to HR Compliance and Human Resources or managing director, as appropriate.<br><br>• Notifies complainant in writing of closure with copies to HR Compliance and Human Resources.<br><br>• Forwards closed EEO file to the HR Compliance Department for retention.<br><br>• Submits letter confirming implementation of corrective actions (when recommended) to vice president with copies to HR Compliance and Human Resources.<br><br>NOTE: All of the above should occur within 45 calendar days from the start of the investigation, unless written notice of the time extension is provided the complainant, HR Compliance, and matrix Human Resources. | Within 5 calender days of receipt of approved report |
| **HR Compliance** | |
| • Submits closure form to Legal.<br><br>• Submits a follow-up memo to the vice president/senior vice president with copies to managing director, if confirmation of implementation has not been received within 5 days of closure. | Upon receipt of closure letter |

(Sheet 2 of 2)

NOTE:  If an employee receives discipline as a result of the EEO investigation, the employee may proceed to Step 2 of the GFT Procedure as outlined in **Table 1**. Step 2 is the final step for discipline resulting from an EEO investigation.


## 5-10 Bulletin Boards
### (Last Revised 11 Nov 2001)

| | |
|---|---|
| **Policy** | FedEx Express provides bulletin boards as a means of communication. |
| **Guidelines** | Employees may not post any notice, writing, poster, sign, or object on bulletin boards that are used for business or Company related communications or other space provided by the Company except as outlined below in this policy.<br><br>Bulletin boards are not to contain false, vicious, or malicious statements concerning the Company, any employee, or customer. Threatening, intimidating, coercive, offensive, or false communications are not to be published on Company local or electronic bulletin boards.<br><br>Employees may not deface or draw any pictures, symbols, or graffiti on any part of Company premises or property. This includes items posted on a Company local bulletin board. |
| **Local Stationary Bulletin Boards** | Local Company bulletin boards are used for business related communications only. However, local non-business bulletin boards may be available for employees to use at the discretion of local management. If available, they should only be posted in non-work areas.<br><br>Local business related and non-business bulletin boards are posted under the supervision of management. The senior member of management in any department or location is responsible for all local bulletin boards in that department or location. Day-to-day implementation of this policy may be delegated to any member of management. |
| **Electronic Bulletin Boards** | The Company allows the use of electronic e-mail bulletin boards for Company business and authorized employee groups and organizations. Employees wishing to establish an e-mail or electronic bulletin board for any purpose or organization should contact the e-mail Group for approval through their e-mail bulletin board EMC2-APPROVAL-FORMS. (See also **10-55 Solicitation and Distribution**.) |
| **Job Postings** | All positions (jobs) are posted with the concurrence of Human Resources, and consistent with **4-15 Career Opportunity**. |

# EXHIBIT 8




## 3-5 Overtime Pay for Nonexempt Employees
### (Last Revised 24 July 2005)

**Policy**        FedEx Express provides remuneration above regular rates of pay for extended workdays/workweeks consistent with general industry overtime (OT) practices for nonexempt employees.

**Scope**         All nonexempt (salaried and hourly) employees

**Guidelines**

**Scheduling**    OT should normally be planned and scheduled in advance by the manager.

All employees should be provided a minimum of 8 hours off between regularly scheduled workshifts. When there are 8 or more hours between each period and the start time is a different calendar date, this indicates a new work shift for the purpose of OT calculation. The only exceptions that are not considered a new work shift are

- When an employee works beyond the shift end time, not allowing 8 hours off between shifts.
- Recall to the workplace.
- Return for a short meeting/training.

In addition, employees should be scheduled two consecutive days off during the week. For unique scheduling situations such as layover and split shift,

REFER TO   **3-35 Corporate Pay Premiums**.

**Hours Considered/Not Considered in OT Calculations**    See Table 3 for a complete list of hours which are considered or are exempted from OT.

**Corporate Pay Week/OT Accrual**    Applicable OT hours are accrued within the Corporate payweek (Sunday through Saturday) for nonexempt salaried and hourly employees, regardless of schedule.

Hours worked in addition to employee's regularly scheduled work shift and/or workweek must be documented for tracking and approval purposes. Management is required to retain the documentation on site for three years and readily available in the event of an audit. A sample form for recording these hours is available at http://hronline.corp.fedex.com/forms/. If electronic tracking systems are available, managers may use these systems in lieu of a hard copy form.

**OT Calculations**    **Casual and Temporary Employees.** Management is discouraged from assigning casual and temporary employees to an extended workday or workweek. Since casual employees are "on call," rather than on a regular schedule, and temporary employees have an indefinite schedule, they are eligible only for weekly OT.

REFER TO   **Weekly OT Rates** guideline.

**Permanent Employees.** OT hours are calculated using daily, weekly, and extended workweek rules. When a permanent employee qualifies for OT, it is calculated by all three methods, and he is paid the greatest of these amounts.

---

NOTE:   **Part-time employees normally should not be scheduled to work over 8 hours a day.**

---

**Daily OT Rates.** If two work periods on different calendar dates are within a 24-hour period, they are considered separate work shifts if they have at least a 7-hour break between work periods. Daily OT is calculated for a 24-hour period beginning with the shift's start time. It is paid at premium rates (1 1/2 or 2 times the regular rate of pay), depending on the employee's status (full-time or part-time) and work schedule (4 days versus 5 days). See Table 1 for OT rates.

**Weekly OT Rates.** Weekly hours over 40 are paid at 1 1/2 times the regular rate for all employees.

**Extended Workweek OT Rates.** Full-time, permanent employees scheduled to work 4 or 5 days in a payweek and part-time, permanent employees working 5 work days in a payweek are paid OT premium for hours worked on a scheduled "day off." Reference to "day" in OT calculations indicates a new work shift. See Table 2 for OT rates.

Exhibit No.  8

Using Table 2 for OT rates, extended workweek premium is only paid if employee works a scheduled day off in addition to the 4- or 5-day schedule. In essence, a 4-day employee must work 5 days within the Corporate payweek to receive OT at 1 1/2 times the regular rate and 6 days within the Corporate payweek to receive double time. Likewise, 5-day employees must work 6 days within the Corporate payweek to receive OT at 1 1/2 times the regular rate and 7 days within the Corporate payweek to receive double time.

---

**NOTE:** Part-time employees who are normally scheduled to work 4 days or less are paid at their regular rate of pay for the first 5 days they work during the payweek. They are paid premium rates only if they work a scheduled day off in addition to working 5 days in the Corporate payweek.

---

If an employee is scheduled for 6 days of work during the Corporate payweek, the manager must designate one of the days as the "day off" for calculation of OT for an extended workweek. When this occurs, the employee should be notified before the beginning of the payweek. The manager must mark the time card as a scheduled day off.

If an employee's normal shift is split in half due to a holiday, the time card needs to be documented properly.

| EXAMPLE |
|---|
| **Monday**    8:30 P.M. to 12 midnight |
| **Tuesday**   Holiday pay and 3 A.M. to 6 A.M. (Holiday premium rates) |
| **Wednesday** 8:30 P.M. to 6:00 A.M |
| **Thursday**  8:30 P.M. to 6:00 A.M |
| The hours worked and placed on Tuesday's time card are hours on the end of Tuesday's shift and should be paid as holiday premium hours. |

There are circumstances that cause cancellation of extended workweek to permanent employees who work all their 4- or 5-day schedule within the payweek.

The purpose of paying overtime for working a regular day off is to provide a pay premium for an extended workweek to permanent employees who work all their 4- or 5-day schedule within the payweek.

**Federal/State OT Laws**   To the extent applicable, where federal or state laws impose different or additional requirements for OT pay or shift scheduling, the Company complies with these regulations. Any questions in this regard should be directed to your matrix Human Resources Representative.

**Pay Premiums**   License premiums are the only premiums that are considered part of base pay for OT calculation. OT pay is not "pyramided" with any other applicable pay premiums, such as shift premium, split-shift premium, layover pay, and holiday pay premium.

| EXAMPLE 1 |
|---|
| OT premium and shift premium occurring on the same day are computed separately and then added together to determine total pay. In other words, an employee receiving $6 per hour who works OT hours during the third shift receives $9.50 per hour ([$6 X 1.5] + $0.50) for those hours worked. |

| EXAMPLE 2 |
|---|
| A full-time (5-day/8 hours per day) employee who works 13 hours on a Corporate holiday receives |
| 8   hours of holiday pay + |
| 12  hours (time and a half) of holiday premium pay + |
| 1   hour (double time) of OT pay |

Case 1:06-cv-21457-CMA    Document 35    Entered on FLSD Docket 10/03/2006    Page 65 of 73

**Substituting Days.** An employee cannot be placed on a floating holiday or vacation unless scheduled to work that day.

**Approval**    Each division head determines the minimum managerial level authorized to approve OT within the limitations of the authority provided in 4-20 Categories of Employment.

---

**NOTE:**  All OT payments must be authorized on hourly time cards or SALSUMM screen with the appropriate manager's approval.

---

**Related Policies**
- 1-10 Personal Days
- 1-15 Vacation for Nonexempt Employees
- 1-22 Business Closings/Inclement Weather
- 1-25 Holidays
- 3-35 Corporate Pay Premiums
- 3-38 Distribution of Additional Hours
- 3-42 Emergency Recall/Call-In Pay—Nonexempt Employees
- 4-20 Categories of Employment

Table 1
Daily Overtime Rates

| Permanent employees who are | for hours | | are paid | |
|---|---|---|---|---|
| Full-time, working 5 days/ 8-hour or less workshifts and All part-time employees | 8 or less | | the regular rate of pay | (straight time) |
| | over 8 and less than 12 | 1 1/2 times | the regular rate of pay | (time and a half) |
| | over 12 | 2 times | the regular rate of pay | (double time) |
| Full-time, working 4 days/ 10-hour workshifts | 10 or less | | the regular rate of pay | (straight time) |
| | over 10 and less than 14 | 1 1/2 times | the regular rate of pay | (time and a half) |
| | over 14 | 2 times | the regular rate of pay | (double time) |

Table 2
Extended Workweek Overtime Rates

| Permanent employees whose regular payweek schedules are | and within the Corporate payweek are required to work on their | | are paid | |
|---|---|---|---|---|
| Full-time 5 days per week | 1st scheduled day off | 1 1/2 times | the regular rate of pay | (time and a half) |
| | 2nd scheduled day off | 2 times | the regular rate of pay | (double time) |
| Full-time 4 days per week/ 10-hour day | 1st scheduled day off | 1 1/2 times | the regular rate of pay | (time and a half) |
| | 2nd/3rd scheduled day off | 2 times | the regular rate of pay | (double time) |
| Part-time 5 days per week[1] | 1st scheduled day off | 1 1/2 times | the regular rate of pay | (time and a half) |
| | 2nd scheduled day off | 2 times | the regular rate of pay | (double time) |

[1] A permanent employee normally works 5 days in the payweek—Monday through Friday. The manager calls in the employee to work on Sunday. The employee receives 1 1/2 overtime on Sunday since he has worked the 5-day schedule in addition to Sunday. Extended workweek overtime compensates the employee for working an elongated workweek and not having 2 days off during the payweek, e.g., Sunday through Saturday.

Table 3
Impact of Overtime Pay for Nonexempt Employees Policy on
Related Policies and Issues for Permanent Employees

| SITUATIONS | REF. # | Do hrs count toward OT calculations? | Do hrs cancel extended work-week OT? | RATIONALE |
|---|---|---|---|---|
| Emergency Recall/Call-in | 3-42 | yes | no | Full-time employees receive 4 hours and part-time employees receive 2 hours at regular rate. Employee is paid for actual hours worked if such hours exceed the minimum "guaranteed" hours defined herein. |
| Report-in | 3-35 | yes | no | Full-time employees receive 4 hours and part-time employees receive 2 hours at regular rate. Employee is paid for actual hours worked if such hours exceed the minimum "guaranteed" hours defined herein. |
| Stranded on Road | | yes | no | Stranded on Road hours (up to a maximum of 12 hours, which includes actual hours worked) are included in the calculation of overtime. |
| Holiday/Floating Holiday | 1-25 | yes | no | These hours are considered "paid-but-not-worked"; however, they are included in the calculation of overtime. |
| Vacation | 1-15 | yes | no | These hours are considered "paid-but-not-worked"; however, they are included in the calculation of overtime. |
| Split-shift Hours | 3-35 | yes | no | Split-shift hours count for overtime calculations. Break hours (typically not less than two or more than four) do not count toward overtime calculations. |
| Required Training/ Mandatory Meetings | 9-50 3-94 | yes | no | These hours are considered hours worked, since attendance is required by management. |
| Travel to Required Training and to Meetings Time | 3-94 9-50 | no | no | Managers are encouraged to plan travel to required training during employee's scheduled hours, whenever possible. Travel time to training and to meetings is paid as straight time and not considered in calculation of overtime. |
| DOT Recurrency Physicals | 4-48 | yes | no | Physicals are a job requirement for continued employment and are considered in the calculation of overtime. |
| Occupational Sick Time/ On-the-Job Injury | 1-5 | yes | no | Employees receive sick pay due to an on-the-job injury. These hours count toward overtime calculation. |
| Medical Absence[1] | 1-5 | no | yes | These hours are not considered as time worked and are not included in daily or weekly overtime calculations. The employee is paid straight time for these hours in accordance with the subject policies. These hours cancel extended workweek overtime. |
| Funeral (Bereavement) | 3-46 | no | yes | |
| Jury/Witness | 3-60 | no | yes | |
| Suspension w/Pay | 2-5 | no | yes | |
| Decision Day | 2-50 | no | yes | |
| Military Pay | 1-50 | no | yes | |
| Personal | 1-10 | no | yes | |
| Layover Courier/Driver | 3-35 | no | no | Actual layover hours are paid 1 hour for every 3 hours. Since employee is not actually working, layover hours are not considered in calculation of overtime. |
| Incomplete Shift/Tardiness | 1-20 | n/a | yes | Employees are expected to be at work and on time for all scheduled shifts and return from breaks on time. Failure to work all scheduled hours cancels extended workweek overtime. |

[1] Not related to an on-the-job injury

NOTE:  All overtime hours to be paid at straight time should be reported on the SALSUMM screen for nonexempt, salaried employees. This prevents the overpayment of overtime when the individuals have "paid-but-not-worked" hours.

# EXHIBIT 9

# EMPLOYMENT AGREEMENT

## IMPORTANT - PLEASE READ AND SIGN

If employed, in consideration thereof, the continuance thereof, the compensation paid therefore, and without further consideration, I do hereby agree:

(1) That by execution of this application, I acknowledge that Federal Express Corporation (hereinafter referred to as "Company") has disclosed to me that an Investigative Consumer Report including information as to my character, general reputation, personal characteristics, and mode of living may be made; and that I, upon written request to the Company, made within a reasonable time after the date of this application, may obtain a complete and accurate disclosure of the nature and scope of the investigation requested, if any.

(NOTE: When required by state law, applicants, upon written request, will also be provided with the name and address of the consumer reporting agency to whom the Company's request to procure a report was made, and may also inspect and receive a copy of the report by contacting this agency. Applicants in California will be informed by the Company if an investigative consumer report is requested, which will include the name of the agency preparing the report and summary of their rights under California law.)

(2)(a) That any and all intellectual property, including without limitation, all inventions, discoveries, works of authorship, patentable works, copyrightable works, trade secrets, ideas, and software and all materials related to any of them, and all improvements thereto, in any way relating to the business of the character now or hereafter carried on or contemplated by the Company or to the processes of the Company, or to apparatus adapted to the business or processes of the Company, discovered, conceived, created, prepared, or made by me, individually, or jointly with others, in the line of work assigned to me at any time during my employment and any other line of work or investigations which the Company is or may become engaged or may contemplate, during my employment, regardless of whether I am involved in such line of work or investigation, shall immediately be disclosed to the Company, shall be considered prepared for and on behalf of the Company, considered a work for hire, and immediately become absolute property of the Company. I hereby assign all my right, title and interest in and to all such intellectual property, including without limitation, letters patent, copyrights, shop right, and all other common law and statutory evidences of possession or ownership of such intellectual property in and by the Company, its successors, and assigns, including the right to apply for and obtain such letters patent, copyrights and other common law and statutory protections in all countries as Company may select. I further agree to assist the Company in making application for such letters patent, copyrights and all other common law and statutory protections for such intellectual property as the Company may consider desirable to protect the Company's title to and interest in such intellectual property and to sign and execute any and all further papers necessary and incident to the perfection of Company's ownership of the intellectual property and the filing and protection of such protections, the Company to bear the costs and expense incident thereto. I will at any and all times cooperate with the Company in the prosecution and defense of any litigation which may arise in connection with any of the foregoing, and agree that termination of my employment will not relieve me of any of the above stated obligations.

(b) I agree that should I, in the course of my employment, acquire any information which is confidential or proprietary to the Company. I will (i) hold such information in confidence at all times during and after my employment with the Company; (ii) not disclose nor communicate confidential information to any third party; and (iii) not make use of such information on my behalf or on behalf of any third party. I acknowledge that an unauthorized disclosure of confidential information would cause irreparable harm to the Company and the Company shall be entitled to obtain appropriate relief should I violate this provision.

(3) That the Company may request, and I also authorize and request each former employer and each person, firm, or corporation given above as reference to furnish any information that may be sought by the Company concerning me and my work habits, character and skill, and I hereby waive any privileges involved and I hereby release my former employers from any and all liability of any type as a result of providing such information to the Company.

(4) That I may be subjected to searches of my person or property as a condition of employment. I further agree to permit employment searches as outlined in the Company's security policies and acknowledge that should I refuse to permit an employment search, I may be terminated.

(5) That at any time in the future, whether during or after termination of my employment, the Company has my consent to furnish any and all (i) reports (s) information gathered and (ii) information relative to my record and services with and termination from the Company. I hereby release the Company from any and all liability of any type as a result of disclosing such information to another company or any third party.

(6) As a part of the preemployment process, drug testing may be required. In certain positions a post job offer medical examination, including drug testing, will be required. I understand that for such positions, any job offer is contingent upon successfully passing the medical examination. I agree to provide access to previous medical records if required.

(7) That I will submit myself to medical examinations, and/or health monitors, which may, under appropriate circumstances, include testing for drugs and/or alcohol, by physicians of the Company's selection as often as requested during my employment, and understand that failing to pass any such examination may prevent me from being in the Company's service; and I further understand and agree that failure of the Company to request physical examination shall not be construed as an admission by the Company that I am physically qualified to perform any specific type of service.

(8) Any offer of employment will be contingent upon the applicants qualification for hand if required for the specific position.

(9) That Company, its successors, subsidiaries, employees, servants, agents, independent contractors, customers, and purchasers at any time may copyright, sell, use and publish all photographic negatives and other likenesses made of me at any time, whether before, during, or after termination of my employment, together with all photographic prints or other reproductions from all or any parts thereof, including making, altering, or adding to the same by publication, advertising, testimonial, or otherwise, and including any and all commercial use thereof whatsoever, with or without the use of my name, all without compensation to me.

(10) The Company is subject to and is operating under various state workers' compensation laws and that in case of injury, I will accept compensation as provided by said laws.

(11) That during the term of my employment, which I understand is INDEFINITE IN DURATION, I will comply with the guidelines established in the Company's policies, rules, regulations, and procedures. I acknowledge and agree that Federal Express has the absolute, unfettered right to change its policies, rules, regulations, and procedures unilaterally, at any time, without prior notice. I ALSO AGREE THAT MY EMPLOYMENT AND COMPENSATION CAN BE TERMINATED WITH OR WITHOUT CAUSE AND WITHOUT NOTICE OR LIABILITY WHATSOEVER, AT ANY TIME, AT EITHER MY OR THE COMPANY'S OPTION. I FURTHER UNDERSTAND THAT NO MANAGER OR REPRESENTATIVE OF THE COMPANY, OTHER THAN THE CEO, OR ANY SENIOR VICE PRESIDENT DESIGNATED BY THE CEO, HAS ANY AUTHORITY TO ENTER INTO ANY AGREEMENT FOR EMPLOYMENT WITH ME FOR ANY SPECIFIED PERIOD OF TIME, OR TO AMEND THIS AGREEMENT IN ANY MANNER. MOREOVER, ANY SUCH AMENDMENTS SHALL BE IN WRITING. NOTHING IN THIS AGREEMENT, NOR ANY DOCUMENTATION OR OTHER COMMUNICATION FROM THE COMPANY, SHALL AFFECT MY EMPLOYMENT AT WILL STATUS.

(12) DISPUTE RESOLUTION PROCEDURE: I FULLY UNDERSTAND MY EMPLOYMENT STATUS, AND I AGREE AND UNDERSTAND THAT I MUST USE THE APPROPRIATE FEDERAL EXPRESS POLICIES TO RESOLVE MY WORK-RELATED COMPLAINTS AND ANY OTHER CONTROVERSY ARISING OUT OF MY EMPLOYMENT OR THE TERMINATION OF MY EMPLOYMENT. I UNDERSTAND THAT THE COMPANY CANNOT GUARANTEE FAIR OR PARTICULAR RESULTS SINCE EVERYONE'S CONCEPT OF FAIRNESS DIFFERS. HOWEVER, THE COMPANY DOES GUARANTEE ME AN OPPORTUNITY TO ACCESS FEDEX POLICIES AND PROCEDURES FOR ALL DISCRIMINATION ISSUES. THE EXCLUSIVE REMEDY AS TO ALL DISPUTES AND THE DECISIONS RESULTING FROM USE OF THESE POLICIES WILL BE FINAL AND BINDING ON THE COMPANY AND ME.

(13) I FURTHER UNDERSTAND THAT AS A RESULT OF MAKING THIS APPLICATION FOR EMPLOYMENT, MY CRIMINAL RECORDS MAY BE EXAMINED BY FEDERAL EXPRESS OR ITS AGENTS. I HEREBY AUTHORIZE FEDERAL EXPRESS OR ITS DESIGNATED AGENTS TO MAKE ANY LAWFUL EXAMINATION OF MY CRIMINAL RECORD.

Exhibit No. 9

-8-

(14) THE INFORMATION THAT I HAVE PROVIDED ON THIS APPLICATION IS TRUE AND COMPLETE TO THE BEST OF MY KNOWLEDGE. ANY MISREPRESENTATION OR OMISSION OF ANY FACT IN MY APPLICATION, RESUME, OR ANY OTHER MATERIALS SUBMITTED TO THE COMPANY OR DURING MY INTERVIEWS, MAY RESULT IN DENIAL OF EMPLOYMENT OR DISCHARGE.

(15) This agreement constitutes the entire and final agreement between the parties and all other prior agreements, arrangements, or understandings, oral or written, are merged into and superseded by the terms of this agreement. I understand that should any part of the agreement be held unenforceable, the enforceability of the remaining provisions shall not be impaired. To the extent the law allows an employee to bring legal action against Federal Express Corporation, I agree to bring that complaint within the time prescribed by law or 6 months from the date of the event forming the basis of my lawsuit, whichever expires first.

(16) In connection with your application with Federal Express Corporation, Federal Express may obtain a consumer report from a consumer report agency. This report may include the following types of information: names and dates of previous employers, reason for termination of employment, work experience, etc. The report may also contain public record information concerning your driving record, driving qualifications, or criminal records from federal, state and other agencies which maintain these records. It may include information concerning previous record requests and state provided records. If hired or placed into a driving position, Federal Express will obtain consumer reports containing your driving qualifications and motor vehicle report on an ongoing basis.

I hereby authorize Federal Express or its designated agents to obtain these reports and make any lawful review of those reports.

I have read this entire Agreement, which consists of 2 pages, and I thoroughly understand its content

6 3 99
6 21 99

*Sandra Timms*


## NOTICE TO APPLICANTS

Federal Express Corporation is required to comply with the provisions of the Immigration Reform and Control Act of 1986. When an applicant is offered employment by Federal Express Corporation, he/she must provide Federal Express Corporation with the papers and documents necessary to prove identity and authorization to work in the United States. This requirement applies to all hires and includes U.S. citizens or nationals, resident aliens, and aliens authorized by federal law or the U.S. Attorney General to be employed in the U.S. Any employment offered by Federal Express Corporation is contingent upon the ability of the candidate to provide the documents required by federal law and to successfully complete all other components of Federal Express Corporation's preemployment screening process. Failure on the part of the person selected for hire to provide the necessary documentation will result in the automatic withdrawal of the offer of employment.

Federal regulations require applicants applying to perform a safety-sensitive function to undergo pre-employment drug testing to determine the presence of marijuana, cocaine, opiates, phencyclidine (PCP), and amphetamines or a metabolite of these drugs in the applicant's system. Other applicants undergo pre-employment drug testing based on company policy.

APP                9512 10

-9-

# EXHIBIT 10

*Sharon Walker Nov. 19. 84*                    200.0 1459

# AGREEMENT
## IMPORTANT

If employed, in consideration thereof, the continuance thereof, the compensation paid therefore, and without further consideration, I do hereby agree:

That by execution of this application, I acknowledge that Federal Express Corporation (hereafter referred to as "Company") has disclosed to me that an Investigative Consumer Report including information as to my character, general reputation, personal characteristics, and mode of living may be made; and that I, upon written request to the Company, made within a reasonable time after the date of this application, may obtain a complete and accurate disclosure of the nature and scope of the investigation requested, if any.

That any and all inventions, discoveries or improvements in any way relating to the business of the character now or hereafter carried on or contemplated by the Company or to processes of the Company, or to apparatus, particularly adapted to business or processes of Company, and improvements on any such inventions or discoveries, whether now known to me or discovered, conceived, made, or acquired by me individually, or jointly with others, in the line of work assigned or in any other line of work or investigation in which Company is or may be engaged, or may contemplate during the term of my employment, shall immediately become absolute property of Company, and shall be disclosed fully to Company; and I further agree to make application for such letters patents or copyrights thereon, or related legal protection, as Company may consider desirable, necessary or useful, and to sign and execute any and all papers incident to the filing, prosecution and protection of such letters, copyrights, or related matters; Company, however, to bear the cost and expenses incident thereto. That without further consideration I will assign all my right, title and interests in such inventions, discoveries, improvements, letters patent, copyrights or other evidences of possession or ownership to Company, its successor or assigns, and will give Company the right to apply for and obtain patents, copyrights, or related legal protection in any and all foreign countries as Company may select; That I will at any and all times cooperate with Company in the prosecution and/or defense of any litigation which may arise in connection with any of the foregoing; that no termination or cancellation of this agreement or of my employment will relieve me of any of my above-stated obligations.

That Company may request, and I also authorize and request each former employer and each person, firm or corporation given above as reference to furnish any information that may be sought by Company concerning me and my work, habits, character or skill, and I hereby waive any privileges involved.

That at any time in the future, whether during or after termination of my employment upon request of any party or any surety, Company may furnish reports and information relative to my record and services with and for Company.

That I will submit myself to physical examination by physicians of the Company's selection as often as requested during my employment, and understand that failing to pass any such examination may prevent me from being in Company's service; and I further understand and agree that failure of Company to request physical examination shall not be construed as an admission by Company that I am physically qualified to perform any specific type of service.

That Company, its successors, assigns subsidiaries, employees, servants, agents, independent contractors, customers and purchasers at any time may copyright, sell, use and publish all photographic negatives and other likenesses made of me at any time, whether before, during or after termination of my employment, together with all photographic prints or other reproductions from all or any parts thereof, including making, altering or adding to the same by publication, advertising, testimonial, or otherwise, and including any and all commercial use thereof whatsoever, with or without the use of my name, all without compensation to me.

That Company is subject to and is operating under worker's compensation law, and that in case of injury, I will accept compensation as provided by said law;

That should I be given employment either in the position applied for or any other, now or hereafter, such employment shall be for an indefinite period and may be terminated at any time without notice or liability for wages or salary, except such earned at date of such termination, and without any other liability whatsoever (for the purposes of this paragraph, wages or salary earned at the date of termination shall only include pay for time worked, and shall not include pay for accrued vacation time, sick leave or the like).

That all terms and conditions of my employment, except to the extent covered specifically by this contract or any other valid contract between Company and me (or someone legally acting on my behalf) shall be determined and governed by Company's Policies and Procedures Manual, as same may be amended from time to time hereafter (a copy of which, together with all amendments, shall at all times be available to me);

That my continued or permanent employment will be contingent upon completion of all employment requirements of whatever position I may hold to complete satisfaction of Company.

That the Company reserves the right to terminate employment at any time if I have withheld, omitted, or falsified any material circumstances or information about the past or present state of my health.

I FURTHER UNDERSTAND THAT AS A RESULT OF MAKING THIS APPLICATION FOR EMPLOYMENT, MY CRIMINAL RECORD MAY BE EXAMINED BY FEDERAL EXPRESS OR ITS AGENT. I HEREBY AUTHORIZE FEDERAL EXPRESS OR ITS DESIGNATED AGENT TO MAKE ANY LAWFUL EXAMINATION OF MY CRIMINAL RECORD.

I CERTIFY THAT THIS APPLICATION WAS COMPLETED BY ME, AND THAT ALL ENTRIES ON IT AND INFORMATION IN IT ARE TRUE AND COMPLETE TO THE BEST OF MY KNOWLEDGE, AND THAT IF I AM EMPLOYED I WILL ABIDE BY THE TERMS AND CONDITIONS STATED ABOVE. I UNDERSTAND THAT ANY FALSIFICATION OR MATERIAL OMISSION OF FACTS IN THIS APPLICATION SHALL BE SUFFICIENT CAUSE FOR MY IMMEDIATE DISCHARGE WITHOUT ANY NOTICE OR LIABILITY TO ME BY COMPANY, WHENEVER ANY SUCH FALSIFICATION OR OMISSION IS DISCOVERED. I AUTHORIZE MY FORMER EMPLOYERS AND OTHER INDIVIDUALS TO GIVE ANY INFORMATION REQUESTED IN CONNECTION WITH THIS APPLICATION.

DATE *Aug , 7 , 1984*    APPLICANT'S SIGNATURE _____

DATE *08 , 27 , 84*    FEC PROCESSOR _____

FEC-M-984  7/84
FEC Reprographics Services
2041730888
PG 4

# EXHIBIT 11

J. K. Nichols 11-2982

Have you ever been refused bond? If yes, explain:
NO

NOTE: A refusal of bond is not an automatic bar to employment. All circumstances will be considered.

IX. SUPPLEMENT

If employed by Federal Express, what do you think your most valuable contribution to the company would be? I have the desire to complete every project I begin!

Describe any additional qualifications you possess which you feel would be pertinent to this application: Besides having an excellent education and good people contact experience, I possess a good deal of common sense.

AGREEMENT

IMPORTANT

If employed, in consideration thereof, the continuance thereof, the compensation paid therefore, and without further consideration, I do hereby agree:

That by execution of this application, I acknowledge that Federal Express Corporation (hereafter referred to as "Company") has disclosed to me that an Investigative Consumer Report including information as to my character, general reputation, personal characteristics, and mode of living may be made, and that I, upon written request to the Company, made within a reasonable time after the date of this application, may obtain a complete and accurate disclosure of the nature and scope of the investigation requested, if any.

That any and all inventions, discoveries or improvements in any way relating to the business of the character now or hereafter carried on or contemplated by the Company, or to processes of the Company, or to apparatus, particularly adapted to business [illegible] of Company, and improvements on any such inventions or discoveries, whether now known to me or discovered, conceived, made or acquired by me individually, or jointly with others, in the line of work assigned or in any other line of work or investigation in which Company is or may be engaged, or may contemplate during the term of my employment, shall immediately become absolute property of Company, and shall be disclosed fully to Company, and I further agree to make application for such letters patent or copyrights thereon, or related legal protection, as Company may consider advisable, necessary or useful, and to sign and execute any and all papers relating to the filing, prosecution and protection of such letters, copyrights, or related matters, Company, however, to bear the cost and expenses incident thereto. That without further consideration I will assign all my right, title and interest in such inventions, discoveries, improvements, letters patent, copyrights or other evidences or [illegible] to Company, its successors or assigns, and will give Company the right to apply for and obtain patents, copyrights, or related legal protection in any and all foreign countries as Company may select. That I will at any and all times cooperate with Company in the prosecution and/or defense of any litigation which may arise in connection with any of the foregoing, that no termination or cancellation of this agreement or of my employment will relieve me of any of my above-stated obligations.

That Company may request, and I also authorize and request each former employer and each person, firm or corporation given above as reference to [illegible] any information that may be sought by Company concerning me and my work, habits, character or skill, and I hereby waive any privileges involved.

That at any time in the future, whether during or after termination of my employment upon request of any party or any surety, Company may furnish reports and information relative to my record and services with and for Company.

That I will submit myself to physical examination by physicians of the Company's selection as often as requested during my employment, and understand that failing to pass any such examination may prevent me from being in Company's service; and I further understand and agree that failure of Company to request physical examination shall not be construed as an admission by Company that I am physically qualified to perform any specific type of service.

That Company, its subsidiaries, assigns, [illegible], employees, servants, agents, independent contractors, customers and purchasers at any time may copyright, sell, use and publish all photographic negatives and other [illegible] made of me at any time, whether before, during or after termination of my employment, together with all photographic prints or other reproductions from all or any parts thereof, including making, altering or adding to the same by publication, advertising, testimonial, or otherwise, and including any and all commercial use thereof whatsoever, with or without the use of my name, all without compensation to me.

That Company is subject to and is operating under worker's compensation law, and that in case of injury, I will accept compensation as provided by said law.

That should I be given employment either in the position applied for or any other, now or hereafter, such employment shall be for an indefinite period and may be terminated at any time without notice or liability for wages or salary, except such earned at date of such termination, and without any other liability whatsoever (for the purposes of this paragraph, wages or salary earned at the date of termination shall only include pay for time worked, and shall not include pay for accrued vacation time, sick leave or the like).

That all terms and conditions of my employment, except to the extent otherwise [illegible] by the contract or any other valid contract between Company and me (or someone legally acting on my behalf) shall be determined and governed by Company's Policies and Procedures Manual, as same may be amended from time to time hereafter (a copy of which, together with all amendments, shall at all times be available to me);

That my continued or permanent employment will be contingent upon completion of all employment requirements of whatever position I may hold to complete satisfaction of Company.

That the Company reserves the right to terminate employment at any time if I have withheld, omitted, or [illegible] any personal circumstances or information about the past or present state of my health.

I FURTHER UNDERSTAND THAT AS A RESULT OF MAKING THIS APPLICATION FOR EMPLOYMENT, MY CRIMINAL RECORD MAY BE EXAMINED BY FEDERAL EXPRESS OR ITS AGENT. I HEREBY AUTHORIZE FEDERAL EXPRESS OR ITS DESIGNATED AGENT TO MAKE ANY LAWFUL EXAMINATION OF MY CRIMINAL RECORD.

I CERTIFY THAT THIS APPLICATION WAS COMPLETED BY ME, AND THAT ALL ENTRIES ON IT AND INFORMATION IN IT ARE TRUE AND COMPLETE TO THE BEST OF MY KNOWLEDGE, AND THAT IF I AM EMPLOYED I WILL ABIDE BY THE TERMS AND CONDITIONS STATED ABOVE. I UNDERSTAND THAT ANY FALSIFICATION OR MATERIAL OMISSION OF FACTS IN THIS APPLICATION SHALL BE SUFFICIENT CAUSE FOR MY IMMEDIATE DISCHARGE WITHOUT ANY NOTICE OR LIABILITY TO ME BY COMPANY, WHENEVER ANY SUCH FALSIFICATION OR OMISSION IS DISCOVERED. I AUTHORIZE MY FORMER EMPLOYERS AND OTHER INDIVIDUALS TO GIVE ANY INFORMATION REQUESTED IN CONNECTION WITH THIS APPLICATION.

9/20/82
Date

Gerald D. Freeman
Applicant's Signature

9-29-82
Date

Sarah Shanks
FEC Processor

FEC-PO-008 REV 9/13/81
FEC Reprographics Services

Exhibit No. 11