STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 06-21457-CIV-Altonaga/Turnoff

Ronald Clausnitzer, Anthony W. Bost,          )
Gerald Freeman, Patricia Kennedy,             )
James Marciano, Fred Ortiz, Sandra Tims,      )
and Elizabeth Tucker,                         )
                                              )
                          Plaintiffs,         )
                                              )
v.                                            )
                                              )
Federal Express Corporation,                  )
                                              )
                          Defendant.          )
_____/

**OPPOSITION TO MOTION TO DISMISS**

**I.  INTRODUCTION**

A Rule 12(b)(6) motion requires the court to examine whether the facts alleged, if true, would entitle plaintiff to some form of legal remedy.  Unless the answer is unequivocally "no," the motion must be denied.  *Conley v. Gibson*, 355 U.S. 41, 45-46; 78 S. Ct. 99, 102 (1957) ("A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.").

The court must construe the complaint in the light most favorable to the plaintiff and determine whether plaintiff can prove any set of facts to support a claim that would merit relief. *Vector Research, Inc. v. Howard & Howard Attorneys P.C.*, 76 F. 3d 692,697 (6th Cir. 1996); *Jacobson v. Hughes Aircraft Co.*, 105 F. 3d 1288, 1292 (9th Cir. 1997) (court's role is not to decide winners and losers or evaluate the strength or weakness of claims).

The within motion to dismiss is really a motion to defeat class certification, which cannot be granted as the court cannot unequivocally determine, at this time, that there is no possibility it would grant certification of the class alleged, or any portion of that class.  This is particularly true as a class of identically situated FedEx hourly employees <u>was</u> certified in California.

## II.  FEDEX DOES NOT PAY ITS EMPLOYEES FOR ALL TIME WORKED

The proposed class consists of all nonexempt employees of FedEx in all states, except California, who were paid on an hourly basis.  This lawsuit, although involving a large number of individuals, is not based on a complicated legal theory.  FedEx contracted with its hourly employees to pay for all time worked.  The employees performed.  FedEx failed to pay for all time worked.  The hourly employees are suing for breach of contract, and, in the alternative, if FedEx denies the contract, for quantum meruit.

FedEx has referred to the evidence filed by plaintiffs in connection with the motion for conditional class certification.[1]  Plaintiff submitted direct evidence that the practices complained of are nationwide:  namely, the declarations of Ronald Clausnitzer, Patricia Kennedy, Anthony Bost, Elizabeth Tucker, James Marciano, and Sandra Tims.  Plaintiff also submitted evidence, developed in a previous case filed in California, of a uniform, documented failure to pay hourly employees for hours worked.  The practices which were documented in California are identical to those visited on FedEx employees in all other states and FedEx policies and procedures are the same nationwide.  (Aff. of André E. Jardini, ¶¶ 25-41, 57.)[2]

---

[1] The standard for conditional class certification under the FLSA is not the same as that for certification under Rule 23, and it should not be assumed that plaintiffs would not offer additional evidence in support of a Rule 23 motion to certify the class.

[2] The Affidavit of André E. Jardini was previously filed with the Clerk of Court as Docket Entry 17, on August 16, 2006.  Whenever this Memorandum refers to "Aff. of André E. Jardini," it is referring to D.E. 17.

Although the legal theories raised in the California case were those cognizable under California state wage and hour law, the factual basis for the claims was exactly the same as in this case.  Significant discovery was propounded, providing testimony and documentary support for the allegation that, as a matter of corporatewide policy, FedEx hourly employees are regularly not paid for time worked.  (Aff. of André E. Jardini, ¶¶ 42-149.)  Discovery in that case also revealed that FedEx employees frequently work through unpaid breaks.  (Aff. of André E. Jardini, ¶¶ 150-214.)  Further, FedEx requires hourly employees who are couriers to take long midday breaks of two to four hours, during which time the courier is not paid, but continues to be under the direction and control of FedEx.  (Aff. of André E. Jardini, ¶¶ 215-235.)  Discovery revealed that these practices were longstanding and widespread and were not limited to California.  Rather, these practices are condoned and rewarded by FedEx headquarters located in Memphis, Tennessee; were part of management-sanctioned cost control policies; are an integral part of FedEx's budgetary planning for all of its locations; and, are uniformly applied.  (Aff. of André E. Jardini, ¶¶ 26-41.)

On December 8, 2004, the California Class was certified.  (Aff. of André E. Jardini, ¶ 4.)[3] On February 24, 2006, the case settled.  (Aff. of André E. Jardini, ¶ 24.)  In a tacit admission of liability and acknowledgment that the problems identified in California occurred nationwide, in April of 2006, FedEx headquarters instituted a global change in the way all of its locations managed hourly employees.  (Aff. of André E. Jardini, ¶ 237.)

---

[3] FedEx petitioned for relief from the class certification to California Court of Appeal and the California Supreme Court, to no avail.  The California class certification analysis is, moreover, equivalent to Fed. R. Civ. Proc. 23, and the same factors as considered.

### III.  THE COURT CANNOT DETERMINE AT THIS STAGE THAT THERE IS NO POSSIBILITY THAT ANY CLASS COULD BE CERTIFIED

As set forth in *Karan v. Nabisco, Inc.*, 78 F.R.D. 388 (D.C. Pa. 1978), the court should not permit an early class determination on an incomplete record.  The preferable course is to permit discovery to continue as to a national class rather than to prematurely exclude the class.  The district court can then modify the class as needed when discovery and the trial add relevant facts to the record.  The court cannot, before discovery has even commenced and the issues have not been developed, conclude that it could not, under any circumstances, certify any class or subclass.

Federal Rule of Civil Procedure 23(a) and (b) set forth the prerequisites to a class action.  FedEx does not dispute numerosity.  The proposed class is 100,000 to 125,000 persons.  (Aff. of André E. Jardini, ¶ 236; motion p. 1, fn. 1.) Fed. R. Civ. P. 23(a)(1).  Nor does FedEx, in this motion, expressly raise other class issues set forth in Rule 23.  Rather, FedEx primarily challenges whether common issues predominate, including whether the class procedure is a superior method of litigating the claims.

### A.     There are Questions of Law or Fact Common to the Class Which Predominate

In this case, there are questions of law or fact common to the class, and this Court cannot determine, unequivocally, at this time, that these questions do not predominate.  Fed. R. Civ. P. 23(a)(2); 23(b)(3).[4]  The test is whether the common questions present a significant aspect of the case.  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022, recently cited in *Tierno v. Rite Aid Corp.*,

---

[4] FedEx does not argue that there are <u>no</u> common questions of law and fact, with respect to Rule 23(a)(2), but only that these questions do not predominate, with respect to Rule 23(b)(3).  Rule 23(a)(2) does not require that **all** of the questions of law and fact be common to all class members.  *Cox v. American Cast Iron Pipe Co.*, 784 F.2d 1546, 1557 (11th Cir. 1986), *cert. denied*, 107 S. Ct. 274, 479 U.S. 883; *Brooks v. Educators Mutual Life Insurance Co.*, 206 F.R.D. 96 (D.C. Pa. 2002).

2006 WL 2535056 (N.D. Cal.) (court finding centralized corporate control to be an important factor in decision to certify class of employees).

The questions of law that are common to the class are whether the conduct of not paying employees for time worked constitutes a breach of contract or, if FedEx successfully denies the contract, whether the facts support a claim for quantum meruit. These are straightforward legal questions, and they are common to all putative class members, since, for relevant purposes, the contracts entered into were the same. While there may be other, insignificant differences in the contract forms, the basic premise: that the employee agrees to work for an hourly wage, and FedEx agrees to pay for the hours worked, is common to all. Additionally, while the damages for each individual may be different, this does not factor into the determination as to whether common questions of law or fact predominate. *In re Screws Antitrust Litigation,* 91 F.R.D. 52, 56 (D. Mass. 1981). Plaintiffs have propounded discovery on this issue which has not yet been responded to. (Aff. of Gwen Freeman, ¶ 1, Exhibit 1.)

The questions of fact are also common and — most importantly — can be proved by a common sampling methodology, as was done in California. As such, questions of fact as to whether work was performed is a predominate common element. *Bell v. Farmers, Inc. Exch.* 115 Cal. App. 4th 715 (2004) (court relies on federal law to decide that survey and statistical evidence may be used in class action to determine liability and damages). As plaintiffs demonstrated in the California case, employee costs are the largest single budgetary item for FedEx, and this has created a corporatewide policy of failure to pay for all time worked. (Aff. of André E. Jardini, ¶ 26.) For example, FedEx has retained human studies engineers to calculate the least amount of time for each job, and these ideals are then set as maximum time allotments for the task. The managers and employees are advised of the time allotted to each task, the

payroll budgets for each location are set based on these allotments, and managers are rewarded for coming in under budget.  (Aff. of André E. Jardini, ¶¶ 27-41.)  However, the time allotments upon which the budgets are based are frequently inadequate, because they reflect the expected time it takes to perform tasks under optimal conditions, and do not accommodate for the variability of real life.  This is true for all FedEx locations.  (Aff. of André E. Jardini, ¶¶ 30, 65, 70, 72-74, 78.)

FedEx requires its hourly employees to physically punch in on a traditional time clock punch-in system.  The time card automatically records the time that the employee punches in. Employees punch in as soon as they arrive at the location and are in uniform, subject to FedEx control and management direction and cannot leave.  (Aff. of André E. Jardini, ¶ 42, 56.)  Once the hourly employee punches in on the time clock, the employee is under the control and direction of FedEx.  (Aff. of Andrè E. Jardini, ¶ 56.)  Employees are expected to, and do, perform job functions for FedEx during the time after they punch in but before the scheduled start time but are not paid for this time.  (Aff. of Andrè E. Jardini, ¶¶ 53-88.)  For example, couriers must locate and procure necessary equipment and conduct pretrip tasks, in order to be ready to launch at the appointed time.  This is expected by FedEx managers and is necessary in order to meet productivity demands.  The FedEx time budget, however, allows for no time to procure equipment.  (Aff. of André E. Jardini, ¶ 53, and Ex. 34.)

Similarly, couriers, at the end of the day, have to complete paperwork, return undeliverable packages and process data.  (Aff. of André E. Jardini, ¶¶ 69, 74, 88; Ex. 2, ¶ 7; Ex. 6, ¶ 9.)  Service agent employees likewise routinely perform tasks, such as setting up the service center for the day, after they punch in but before scheduled start time.  FedEx managers look the other way.  (Aff. of André Jardini, ¶¶ 55, 73.)  Service agents are obligated to check the location

three times to make sure that all packages have been accounted for; restock the customer counter, port the bags, check the package to tabs, count the cash and checks; run a cash report; account for any discrepancies; prepare reports; put away the trackers.  Customer service agents cannot complete all of the closing procedure tasks in the allotted time as the last half hour of the day typically accounts for at least half of the packages that come into that location.  Packages must be ready by ten minutes after closing, which entails processing, bagging, and transporting. Customers, including late arrivals, must be attended to.  (Aff. of André Jardini, ¶ 59; Exs. 19, p.29; 28, ¶¶8, 9; and 31, ¶¶18 19.)  Numerous witnesses testified that service agents work past the scheduled end time.  (Aff. of André Jardini, ¶¶ 57, 59-62, 65-67.)  And as the California court recognized, employees would not sit around the FedEx distribution center if they had no additional obligations to fulfill.  (Aff. of André Jardini, Ex. 8.)  ("Normally, a nonexempt employee does not stay after the end of their shift on the clock performing nonwork activities expecting to be paid.")

Employees will also manually write on the time card the time codes for each task performed, and the start and end time for that task.  (Aff. of Andrè E. Jardini, ¶¶ 43-45.)  Certain hourly employees are also required to carry a tracker device, again reflecting the start and end time for each task, and to scan packages.  (Aff. of Andrè E. Jardini, ¶¶ 45-46.)

The declarations of Mr. Clausnitzer, as a FedEx employee of over 23 years, Ms. Kennedy, and Mr. Bost establish that in Florida, employees worked after punching in and before the scheduled start time, and after the scheduled end time, but before punching out, without getting paid.  The declaration of Ms. Tucker, a FedEx employee since 1988, establishes that the same situation existed in Texas and Indiana.  The declaration of Mr. Marciano, who has worked for FedEx for over 18 years, establishes that the same situation existed in New York.

Ms. Tims establishes the same as to Nevada, Georgia, and Tennessee.  (Aff. of André Jardini, Ex. 1-6.)

The precise amount of time that is at issue for each employee, for each shift, can be calculated by comparing the computer record showing scheduled begin and end times with the hard copy time sheet, showing when the employee actually punched in and out.  In the California case, these records show significant begin-shift and/or end-shift time, **97%** of the time, with an average amount of unpaid time per shift of 16.51 minutes.  (Aff. of André Jardini, ¶¶ 90, 91, 112.)  This claim can be easily proved, as it was in California, by obtaining a representative sampling of the available electronic data of the punch-in and punch-out times and the time paid according to scheduled start and end times.

The same budgetary concerns cause FedEx employees to work through unpaid breaks.  Again, this can be proved for couriers by a comparison of the computer records, which note when breaks are allegedly taken, with the "stop action" data – which documents when specified tasks are performed.  Plaintiffs' expert analyzed 13 million records concerning each shift worked by a class member from October 15, 1998 through November 2005; 128 million records identifying each task recorded; and 187 million records identifying the "stop" times for pick up and deliveries.  There were almost 1.2 million work events by California class members over that period during the unpaid breaks.  The total number of unpaid breaks in which employee work activity occurred is 690, 903 – representing 23% of all breaks taken.  (Aff. of André Jardini, ¶¶ 151-213; 171, 173, exs. 20, 30, 31, 32, 33.)

It was undisputed in California that the records to monitor break violations were always available to FedEx.  (Aff. of André Jardini, ¶¶ 178, 180.)  But these records were not reviewed

by FedEx management for the purpose of reducing violations, until 2005.  (Aff. of André Jardini, ¶ 175.)

The universality of violations in California, as proven by documentary record, combined with the fact that FedEx centralizes all control over employee policies and procedures from its headquarters in Memphis, Tennessee permitting little, if any, localized autonomy, provides evidence that FedEx employees in other states have had the same experience.  In fact, the declarations of the class plaintiffs so state.

Finally, plaintiffs presented evidence in California, and will do so here, that a courier employee on a split shift will typically be forced to take an unpaid break for two to four hours, between shifts, when the employee is limited to a small geographic range, according to nationwide FedEx policy.  He or she is unable to go where he wishes, or do what he wants, remains responsible for the truck and in uniform, cannot go home, and may not have sufficient time to even return to the domicile location.  (Aff. of André Jardini, ¶¶ 215-220.)  The FedEx Person Most Knowledgeable testified that the courier is not permitted to leave that geographic area.  Even within the geographical area, the courier is not allowed to go from one end of the geographic region to the other.  (Aff. of André Jardini, ¶¶ 227-228.)  Many couriers simply stay in their truck and drive nowhere during the split shift.  FedEx odometer data show that 83% of the time couriers do not drive their trucks **at all** during the split-shift breaks and 95.2% of the time, drive <u>fewer</u> than five miles.  (Aff. of André E. Jardini, ¶ 221.)

For this so-called break period, the courier employee is not compensated, and as the declarations of Mr. Clausnitzer, Ms. Kennedy, Ms. Tucker, Ms. Tims, and Mr. Bost establish that the geographic limitation was nationwide, a proposition with which it is not expected FedEx will disagree.  (Aff. of André Jardini, ¶ 2, exs. 1, 2, 3, 5 and 6.)

Further, plaintiffs will not be requesting the court to certify one monolithic class, but would ask the court to certify the class by rationally distinguished subclasses, by groups of similar job category, and, if necessary, by states with laws that are relevantly similar in a pertinent way.[5]  It is also possible that the court will determine not to certify as to certain states at all.  But the court cannot say, on the pleadings, that it is impossible for <u>any</u> class or subclass to be certified, which is what would be necessary to grant this motion.

Numerous courts in analogous circumstances have certified a class.  *Mendoza v. Zirkle Fruit Company*, 222 F.R.D. 439 (D.C. Wash. 2004) (commonality requirement satisfied in suit by warehouse employees of fruit company alleging that the company had conspired to hire illegal immigrants to hold down wages); *Jones v. American General Life and Accident Co.,* 213 F.R.D. 589 (D. C. Ga. 2002) (commonality requirement satisfied by a claim alleging that the employer's termination of life insurance coverage for retirees constituted a breach of contract where the resolution of the claim depended upon the construction of the contracts, the terms of which were contained in a retirement plan document, which was not individually tailored, but were form contracts made available to the employees as a class); *Martinez v. Mecca Farms, Inc.,* 213 F.R.D. 601 (D.C. Fla. 2002) (proposed classes of packing house workers presented a common question of fact as to whether owner of the packing houses was the "employer," and common legal questions existed as to violations of AWPA; whether time spent by tomato packers waiting to "punch-in" in the beginning of the day was compensable; and whether the defendants were required to pay overtime); *In re VISA Check/Mastermoney Antitrust Litigation*, 192 F.R.D. 68 (2000); *Steinberg v. Nationwide Mutual Insurance Co.*,  224 F.R.D. 67 (D.C. N.Y. 2000) (commonality existed in lawsuit against automobile insurer alleging breach of contract

---

[5] Again, discovery has been propounded with respect to ascertaining information about each job category.  (Aff. of Gwen Freeman, ¶ 1, Exhibit 1.)

since all putative class members signed substantively similar form agreements); *Caridad v. Metro-North Comm. R.R.*, 191 F.R.D. 283 (1999) (African-American employees alleging discrimination met requirement for class certification); *Vaslavik v. Storage Technology Corp.*, 183 F.R.D. 264 (D. Col. 1998); *Rodriguez v. Carlson*, 166 F.R.D. 465 (E.D. Wash. 1996); *Krueger v. New York Telephone Co.*, 163 F.R.D. 433 (S.D.N.Y. 1995); *Kamean v. Local 363 International BHD of Teamsters, Chauffeurs, Warehousemen & Helpers of America*, 109 F.R.D. 391 (D.C. N.Y. 1986) (issues regarding employers' method of calculating wages and benefit compensation raised common questions of fact and law).

Plaintiffs will also show, as they did in California, that the class action is the superior method to litigate the issues, both because individual plaintiffs do not have sufficient amounts at stake[6] and because of the culture of intimidation against employees who would make a claim.

Similarly, neither FedEx, nor the individual class members, would be served by having 50 different judges issue 50 different decisions on the same issues.[7]

The members of the class do not have an interest in individually controlling the prosecution of separate actions, pursuant to Fed. R. Civ. P. 23(b)(3)(a), as it is clearly infinitely more efficient for class counsel, who has already had four years of litigation experience, and has already conducted massive discovery against FedEx, to prosecute the action.

The desirability of concentrating the litigation of the claims in one forum is, in this case, extremely high.  Fed. R. Civ. P. 23(b)(3)(c).  Although the number of employees is large, FedEx has a single database system for all employees, thus making discovery relatively easy and presentation of the issues relatively simple.  In contrast, having 50 different judges wading

---

[6] Individuals in California received, in settlement, a range of up to approximately $4,700.

[7] There are forty-nine states and the District of Columbia at issue.

through discovery disputes regarding substantially the same information, depositions from the same people, and document requests from the same database, is cumbersome in the extreme.

There are few difficulties likely to be encountered in the management of this case as a class action, as the smooth progress of the case in California has indicated.  Fed. R. Civ. P. 23(b)(3)(d).  FedEx can point to no relevant differences in the law of contracts, which has not changed, in any <u>relevant</u> part since Williston on Contracts was first published.  Similarly, the concept of quantum meruit is not complex, and there are no differences in the laws of the 50 jurisdictions, pointed out by FedEx, or which has come to the attention of plaintiffs' counsel.[8]

## IV.    THE PURPORTED OBSTACLES TO CERTIFICATION ARE NOT REAL

As to the statute of limitations issue, plaintiffs have already assembled the applicable statutes of limitation, a simple research project.  But this issue only goes only to damages.  As set forth above, a difference in damages does not defeat a finding of commonality.  *In re Screws Antitrust Litigation*, 91 F.R.D. at 56.  The same is true for the few class members who may have a contractual time limitation, even assuming arguendo that such a limitation is enforceable.  If and when there is a settlement, or a verdict, it will be a ministerial task to extract the information from the FedEx database as to which employees fall within the class period for each state and how many weeks that employee worked in that class period.  All of this information is electronically retrievable.

Similarly, FedEx refers generally to requirements that some states might have with reference to certain defenses but falls far short of showing that these issues will necessarily defeat certification.  The fact that the parties may have to brief some issues, and the court makes some rulings, is hardly reason to dismiss the complaint.  It may be that this court will not be able

---

[8] Some jurisdictions refer to "unjust enrichment" or "quasi contract," but the concept is identical.

to certify a class as to certain jurisdictions, but unless the court can say that <u>no</u> class or subclass could be certified – even, for example, all couriers in Florida – then the motion must be denied. *See, Hanrahan v. Britt*, 174 F.R.D. 356, 364 (E.D. Pa. 1997) (class certified where systematic course of conduct shown, and court found that the laws of several states as to fraud and misrepresentation were not "so great as to preclude class treatment"), citing *In re ORFA Securities Litig.*, 654 F. Supp. 1449, 1462-63 (D.N.J. 1987).

It is also significant, in this regard, that this case is one brought under this Court's original jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), which was "intended to expand substantially federal court jurisdiction over class actions . . . with a strong preference that interstate class actions should be heard in federal court." *Hart v. FedEx Ground Packaging System*, 457 F.3d 675 (7th Cir. 2006). It is thus contemplated that a federal court hearing a class action arising from interstate commerce, but which is also grounded in diversity, will need to apply the law of diverse states.

FedEx argues that commonality is defeated because its corporate policies and procedures are regularly revised, but surely FedEx will not claim that it can adopt a policy which <u>entitles</u> it to demand work of its hourly employees for which it need not pay. Other policies and procedures are irrelevant.

FedEx raises the possibility of differences in overtime and meal break requirements of the states. Again, irrelevant. As to overtime, the claim here is that time worked has not been paid for. That may, or may not, create additional overtime liability, but plaintiffs allege that FedEx <u>contractually</u> agreed to pay overtime (which appears to be admitted by FedEx in citing to the overtime provisions of the People Manual), and plaintiffs have propounded discovery to determine what rate FedEx contends it owes to its hourly employees for overtime. (Aff. of Gwen

Freeman, ¶ 1, Exhibit 1.)  Presumably, that amount is not zero.  If the court ultimately finds that plaintiffs cannot sustain the burden of proof to show entitlement to *enhanced* pay at overtime rates, then so be it.  But plaintiffs could still recover for the work performed at the usual rate.  In any event, it is premature to decide this issue before the pertinent discovery has been responded to.  Finally, FedEx claims that it is too difficult to determine the proper rate of overtime pay. And yet FedEx pays overtime, in every state, every day.

As to meal breaks, there is no allegation in this case that FedEx is violating wage and hour laws by failing to give paid breaks.  Rather, the contention is that FedEx purports to give breaks, for which the employee is not paid, and yet requires the employee to work, thus breaching its contract to pay for all time worked.  Whether FedEx is required to provide breaks is not an issue, because the claim herein is not being brought under the wage and hour laws of each state.  The complaint alleges only breach of contract and quantum meruit.  For this reason the unpublished case of *Glewwe v. Eastman Kodak Co.*, 2006 U.S. Dist. Lexis 33449 (W.P.N.Y. 2006), as yet unreviewed on appeal, is distinguishable, as it is a wage and hour case.  *Miller v. Motorola, Inc.*, 76 F.R.D. 516 (N.D. Ill. 1977) failed on numerosity grounds, and *Reinsich v. New York Stock Exchange*, 52 F.R.D. 561, 564 (S.D.N.Y. 1971) is even more inapposite as not involving employment or contract claims at all.

Likewise, the case of *Hammett v. American Bankers Ins. Co.*, 203 F.R.D. 690 (S.D. Fla. 2001) is distinguishable because the defendant presented a detailed "Claim Handling Matrix Credit Unemployment Claims," citing to each of the credit insurance statutes of each of the fifty states, demonstrating great variability as to four specific issues that were controlling of liability in that action.  Insurance is, of course, a highly regulated industry in all states.  FedEx made no such comprehensive showing here.  Moreover, the claim here arises under common law, not

wage and hour laws, which may or may not provide additional layers of protection and additional remedies.

The fact that an employee may have worked in more than one state is not "mind boggling."  It will actually make no difference at all.  That employee will be a member of two or more subclasses.  The fact that the employee is the same individual won't enter into the equation. No one except the employee, who will ultimately get two or more checks, will even know.

Finally, as to the *de minimus* issue, FedEx raised this defense in California.  *De minimus*, under federal FLSA law, if applicable, is less than ten minutes.  *See, e.g.*, *Lindow v. United States*, 738 F. 2d 1057 (9th Cir. 1984).  Plaintiffs have already proved an average of unpaid time worked of nearly 17 minutes per day, per employee.  The *de minimus* defense is unlikely to be a problem, but, in any event, the court cannot decide the issue on a motion to dismiss.

Finally, FedEx cites to *Basco v. Wal-Mart*, 216 F. Supp. 2d 592 (E.D. La. 2002) for the proposition that employment-related actions are not properly the subject of class action lawsuits, and it is true that Wal-Mart, and other large corporations notorious for stealing labor from their powerless workforce, were initially successful in avoiding justice, but the trend is decidedly the other way at present as Wal-Mart is fast discovering.  (*See,* Reuters, Oct. 13, 2005, Pa. jury awards $78.47 million in damages to class for off the clock and break violations.)  Furthermore, the *Basco* court was not faced with the high level of documentation that can be used to prove the claims statistically here.

## V.    FED. R. CIV. P. 8(e)(2) PERMITS ALTERNATIVE PLEADING

FedEx argues that plaintiffs' claim for quantum meruit must be dismissed because it is inconsistent with plaintiffs' claim for breach of contract.  This argument is clearly incorrect.

Fed. R. Civ. P. 8(e)(2) provides that a party may set forth two or more statements of a claim **alternatively or hypothetically**. The Rule further provides that a party may also state as many separate claims as the party has **regardless of consistency and whether based on legal, equitable and maritime grounds.**

It has been specifically held that a plaintiff may, on the same set of facts, allege both a breach of contract and a quantum meruit claim. *Marcella v. ARP Films, Inc.,* 778 F. 2d 112, 117 (2d Cir. 1985); *see also*, *Owen v. General Motors Corp.*, 2006 WL 2808632 (W.D. Mo.) (Sept. 28, 2006) ("The fact that plaintiff cannot simultaneously recover damages for both breach of an express contract and unjust enrichment does not preclude that plaintiff from pleading both theories in her complaint.).

In *May v. Sessums & Mason P.A.*, 700 So. 2d 22 (1997), cited by FedEx, the court simply found that the law firm could not collect an additional fee where the written retainer agreement – which neither party denied had been duly executed – provided that payment of an additional fee to the law firm required the consent of the client, and she did not consent.

Here, FedEx has not yet admitted that there is a written contract which expressly provides for its hourly employees to be paid for all time worked; at a rate of pay agreed upon by both parties; and that, where applicable, overtime will be paid in accordance with the general industry overtime practices, as plaintiffs allege. Indeed, in the motion itself, FedEx appears to be <u>denying</u> that there is an enforceable contract because the employment relationship is "at will." Thus, alternative pleading is particularly appropriate.

Nor does this court's decision in *Posely v. Eckerd Corp.*, 433 F. Supp. 2d 1287 (2006) compel a different result as, after three years of factual development, the court first determined that the plaintiffs were exempt employees whose compensation was determined by the

contractual agreement between the parties.  Quantum meruit could not be utilized to <u>enhance</u> plaintiffs' compensation, which had been fixed by contract.  The court has not yet had the opportunity to rule on whether there is a contract fixing the rate of compensation in this case.  If and when FedEx so admits, or discovery so establishes, it is possible that the quantum meruit cause of action will no longer serve a purpose in this lawsuit.  Indeed, plaintiffs hope that this will be the case.

If, however, FedEx takes the position that the employment agreement is not an enforceable contract, or that there was lack of mutual assent as to the method of determining compensation, or raises an argument that the hours worked were not part of the employment agreement, then plaintiffs are entitled to seek redress through quantum meruit.  It is premature to make any such determination because FedEx has not answered, has not admitted anything, and has not raised any affirmative defenses.

## VI.    THE AT-WILL NATURE OF THE EMPLOYMENT CONTRACT IS IRRELEVANT

### A.    <u>This Case Does Not Concern Termination From Employment</u>

FedEx acknowledges that plaintiffs allege an express written contract, "comprised of the agreement signed upon application and FedEx's written policies and procedures manual." FedEx then proceeds to argue that the <u>policies and manuals</u> are not written contracts.  But clearly the "agreement signed upon application" is a written contract.  Fed. R. Civ. P. 8(e)(2) states that plaintiff may plead in the alternative, and if either statement is sufficient, the pleading is sufficient.

Further, FedEx argues that the employment relationship is "at will" and appears to argue that "at will" contracts cannot support a breach of contract action.  But, "at will" simply means

that the contract can be terminated by either party at either time.  There is no issue being raised here of either party terminating the employment contract.  Rather, the claim here is that FedEx has simply failed to pay for all work performed under the contract.  "At will" does not mean that the employer can refuse to pay for hours worked.

**B.**     **Whether The Polices Or Procedures, By Themselves, Constitute An Enforceable Agreement Is Irrelevant**

FedEx also argues that the "People Manual" does not constitute an enforceable contract in and of itself.  Plaintiffs, however, point to the "People Manual" as evidence on the issue of whether there <u>is</u> an enforceable contract.  The reference in the People Manual to that contract as the "employment agreement" is evidence of such an agreement.  (Aff. of Gwen Freeman, ¶ 2, Exhibit 2.)

The People Manual, likewise, sets forth how overtime is calculated, and plaintiffs may rely on the Manual as evidence to prove an enhancement to damages, if there is a dispute on this issue.  FedEx may or may not agree, in discovery, that it is obligated to pay overtime at the rates set forth in the People Manual, but it cannot take the position that it is entitled to pay nothing for time worked.  (Aff. of Gwen Freeman, ¶ 2, Exhibit 2.)  Notably, in California, the settlement was structured averaging the rate of pay, and therefore the issue did not even arise.

**C.**     **The Case Law Cited By FedEx is Inapposite**

The case law cited by FedEx bears out the inapplicability of FedEx's argument to the within case, as FedEx primarily cites to decisions where the employee attempted to argue that the employee handbook altered the "at will" employment status such that the employee could only be terminated for cause.  Again, that is simply not an issue here.  *Aquinas v. Federal Express Corporation*, 940 F. Supp. 73 (S.D.N.Y. 1996), (employee brought a discrimination claim and

alleged that the employee handbook altered her "at will" employment status); *Montalvo v. Federal Express Corporation*, the citation of 1996 U.S. at Lexis 13587 (2d Cir. 1996) is not searchable on Westlaw; *Montalvo v. Federal Express*, 1995 WL733600 (S.D.N.Y.) (employment may be terminated at will); *Federal Express Corp. v. Dutchman*, 846 S.W. 2d 282 (Tx. 1993) (retaliating discharge claim); *Lorbacher v. Housing Auth. Of Raleigh*, 493 S.E. 2d (N.C. 1997); *Cowen v. Federal Express Corporation*, 25 F. Supp. 2d 33 (1998), (wrongful termination claim, court found that the employee manual did not supersede at will contract); *Sarbiewski-Keltner v. Federal Express Corporation*, 1997 WL 11297 (E.D. Pa. January 10, 1997) (presumably the case referred to) (plaintiff claimed she was fired because she rebuffed the sexual advances of a senior person, and she raised the People Manual for the purpose of overturning the presumption of at will employment); *Warner v. FedEx*, 174 F. Supp. 2d 215 (D.N.J. 2001) (alleged termination based on age discrimination); *Zajac v. FedEx Express Anca Station*, 68 Fed. Appx. 95 (9th Cir. 2003) (wrongful termination, court held breach of contract failed because no evidence that the at will relationship was modified or that termination violated the covenant of good fair or fair dealing); *Kelly v. Gill*, 544 So. 2d 1162 (5th Dist. 1989) (wrongful termination, court held statutory provisions comprising a law enforcement officer's bill of rights did not create a property interest in continued employment); *Ellison v. DeKalb County*, 511 Se. 2d 284 (Ga. App. 1995) (police sergeant claimed improperly denied promotion, court found Department of Public Safety employee manual did not constitute a contract regarding conditions of promotion); *Leahy v. FedEx*, 613 F. Supp. 906 (E.D.N.Y. 1985) (former employees alleged false imprisonment, assault, and negligent and intentional infliction of emotional distress, court analyzed New York standard for "guarantee of genuineness" with respect to claims for negligent infliction of emotional distress); *Pacheo v. Raytheon Co.*, 623 A.2d 464 (R.I. 1993) (court granted summary

judgment for an employer in a wrongful discharge action finding that Rhode Island has no cause of action for wrongful discharge).

### VII.   THE COMPLAINT ALLEGES A STRAIGHTFORWARD BREACH OF CONTRACT THAT IS NOT CONTRADICTORY

FedEx attempts to manufacture in some kind of "inherent contradiction," in the pleading when in fact there is no contradiction.  Plaintiffs allege that FedEx has contracted with its employees to pay for all time worked, but did not do so, and are thus in breach.  The employment agreement and the official FedEx policies evidence a promise on the part of FedEx to pay for all time worked.  FedEx would hardly put in its official policies and procedures manuals, including its "People Manual," that it intended to extort unpaid services from its employees.  The problem is that FedEx does not, in fact, pay for all time worked.  The inconsistency is in FedEx's position, not plaintiffs.

Respectfully submitted,

Michael S. Duberchin
LAW OFFICES OF MICHAEL
  S. DUBERCHIN
4768 Park Granada, Ste. 212
Calabasas, CA 91302
Telephone  (818) 222-7484
Facsimile:  (818) 222-7480
Email:  msdlaw@earthlink.net

Andre E. Jardini, Esq.
Gwen Freeman, Esq.
KNAPP, PETERSEN & CLARKE
500 North Brand Boulevard, 20th Floor
Glendale, CA 91203-1904
Telephone:  (818) 547-5000
Facsimile:  (818) 547-5319
Email:  aej@kpclegal.com
Email:  gf@kpclegal.com

By: s/ Marshall Dore Louis

Glen Robert Bregman
LAW OFFICES OF
ROBERT BREGMAN
16633 Ventura Blvd., Ste. 1240
Encino, CA 91436
Tel: (818) 981-9793
Fax: (818) 981-9807
Email:  glenbregmanlaw@aol.com

Marshall Dore Louis
SINCLAIR, LOUIS, HEATH,
NUSSBAUM & ZAVERTNIK, P.A.
169 East Flagler Street, Suite 1125
Miami, Florida 33131
Tel: (305) 374-0544
Fax: (305) 381-6869
Email:  mdl@sinclairlouis.com

## <u>Certificate of Service</u>

**I hereby certify** that on October 18, 2006, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified.

By:___s/ Marshall Dore Louis_____
Marshall Dore Louis
SINCLAIR, LOUIS, HEATH,
NUSSBAUM & ZAVERTNIK, P.A.
169 East Flagler Street, Suite 1125
Miami, Florida 33131
Tel: (305) 374-0544
Fax: (305) 381-6869
Email:  mdl@sinclairlouis.com

**SERVICE LIST**

Sandra C. Isom, Esq.  
Richard S. McConnell, Esq.  
FEDERAL EXPRESS CORPORATION  
3620 Hacks Cross Road, Bldg. B, 3rd Floor  
Memphis, Tennessee 38125  
Tel: (901) 434-8600  
Fax: (901) 434-9271  
(Via US Mail)

Aaron Reed, Esq.  
LITTLER MENDELSON, P.C.  
One Biscayne Tower, Suite 1500  
2 South Biscayne Blvd.  
Miami, Florida, 33131  
Tel: (305) 400-7500  
Fax: (305) 603-2552  
(Via US Mail)

Attorneys for Defendant, Federal Express Corporation